FLOSSIE BASH, APPELLANT, V. JAMES O. BASH ET AL., APPELLEES.

FILED OCTOBER 25, 1932. No. 28249.

*L. L. Hines, Victor Westermark* and *Perry, Van Pelt & Marti,* for appellant.

*Butler & James* and *R. D. Druliner, contra.*

Heard before GOSS, C. J., DEAN, EBERLY, DAY and PAINE, JJ., and BEGLEY and BLACKLEDGE, District Judges.

BLACKLEDGE, District Judge.

In this case the question is whether the allegations of the petition are sufficient to state a cause of action in favor of the plaintiff. Certain of the defendants demurred to the second amended petition in the district court, the demurrer was sustained and, the plaintiff electing to stand on the petition, the case was dismissed, and this appeal presents for review the matter of the sufficiency of the petition as against the demurrer.

The following facts appear in the allegations of the petition: The Parks Equity Exchange was in financial difficulties and, desiring to raise money and establish credit for the continuance of its business, at a stockholders' meeting held April 5, 1919, a resolution was adopted which was entered in the minutes of the meeting and individually signed therein by the defendants in the following words:

"Motion made and carried this 5th day of April, 1919, that we the stockholders of the Parks Equity Exchange do hereby empower the board of directors to borrow money, to renew notes and get money to do business to the extent of sixty thousand dollars ($60,000) if necessary and we severally and individually guarantee the security of the same."

That the board of directors acting under the authority of said guaranty did borrow money, renew notes and secure credit to enable the exchange to continue doing business, and such action was necessary to enable the exchange to continue as a going concern.

That at that time James O. Bash, one of the stockholders and a signer of said resolution, was a creditor of the exchange to the amount of $6,000, represented by a promissory note as to which he refused to extend the time of payment thereof unless additional security was furnished, and thereupon, upon the signing of the resolution and furnishing to him of a copy thereof, he did renew the note and loaned an additional sum of $5,694, which was also represented by a note, both notes maturing in 18 months from their date or on November 12, 1920.

That thereafter on May 12, 1921, said two notes were renewed into a note for $12,000, due in one year from its date, and thereafter on May 12, 1924, another renewal was made for the whole sum by a note maturing in two years from its date. This last named note is set forth by copy in the petition as evidencing the existing indebtedness, certain indorsements of interest payments are shown thereon, and an indorsement by the payee, James O. Bash, transferring the note to the plaintiff, Flossie Bash.

It further appears from the petition that the Parks Equity Exchange was adjudged bankrupt in November, 1927, and that certain dividends were received from the bankrupt estate in 1928 of $872, in 1929 of $938, and in 1930 a final dividend of $255, all of which were applied on the note and that nothing further may be derived from that source.

The plaintiff prays judgment for the sum of $14,432 with interest from October 1, 1930, as the amount due on the note.

The action was commenced October 4, 1930.

It is also alleged that the intent and purpose of the defendant signers of the guaranty in giving the same was to empower the board of directors to borrow money and to guarantee the payment of all notes given by the board under the authority of the guaranty, and in addition there is an allegation in respect to the particular wording of the guaranty whereby it is claimed that inadvertently the word "individually" was used therein in lieu of the word "jointly," and that the word "security" was also used in lieu of the word "payment," and a reformation of the instrument is asked in those particulars.

The proposition raised and principally relied upon by the defendants under the demurrer is that it appears on the face of the petition that the action at the time of its commencement was barred by the statute of limitations. There is the further proposition that it is necessary there should be pleaded a notice to them of the

acceptance of the guaranty; but, in view of the conclusion reached upon the question of the statute of limitations, we do not find it necessary to discuss this latter proposition.

It is to be noted that the first notes made pursuant to and at approximately the time of the execution of the contract of guaranty matured and remained unpaid and unrenewed for a period of six months. There can be no doubt of the accrual of a cause of action upon the guaranty at that time, or that the statute of limitations commenced to run thereon; and the question to be determined would, therefore, be whether by any later act of the parties the running of the statute was suspended.

It does not appear from the petition that the defendants who signed the guaranty had any part in, or notice or knowledge of, the later transactions involving the renewals and extensions of the note, and no act of the defendants or any of them after the execution of the contract of guaranty in recognition of the obligation thereof such as would toll the running of the statute of limitations is pleaded. The question must therefore be determined upon construction of the contract itself. The exchange continued in business until it was adjudged bankrupt in November, 1927, two and a half years after the maturity of the last renewal note and seven years after the accrual of the cause of action on the guaranty by the maturity of the notes first given thereunder. This action was commenced approximately three years after the adjudication of bankruptcy.

The appellant contends that the instrument under consideration is a "continuing guaranty," and would apply this term to the time and manner of its enforcement, leaving the right of action thereon to be governed, so far as the matter of limitations is concerned, by the right of action upon the original note or any renewal thereof.

In this construction respecting a continuing guaranty, we think there is error in that such term ordinarily contemplates a series of transactions which give rise to the

liability; as, successive purchases of goods which may be made within its time, either stated or contemplated. The statement of the law is made in 12 R. C. L. 1061, sec. 11, as follows:

"Where there is no limit in time or amount the courts hesitate to classify the guaranty as a continuing one. Some courts even take the view that a contract will not be construed as a continuing guaranty unless its language reasonably so requires. On the other hand, it is held that a liberal construction is to be given in favor of one claiming rights under a guaranty and that it is the duty of the guarantor to limit his liability to a single transaction if he wishes to avoid further responsibility. Between these extreme views is a middle ground, that the proper construction of the instrument is such as best accords with the intention of the parties, as manifested by the terms of the guaranty, in connection with its subject-matter and surrounding circumstances, neither enlarging the words beyond their natural import in favor of the creditor nor restricting them in aid of the surety."

This court has adopted the rule of strict construction as to such contracts and in the case of *Hunter v. Huffman*, 108 Neb. 729, it is held:

"The rule of *strictissimi juris* applies in determining the effect of a contract of guaranty. When the meaning of the contract is ascertained, or its terms are clearly defined, the liability of the guarantor is controlled absolutely by such meaning and limited to the precise terms."

It is further held in the case last cited and in the case of *Rushton v. Dierks Lumber Co.*, 2 Neb. (Unof.) 563, that any material change in the terms of the principal contract which is covered by the guaranty agreement, made without the consent of the guarantors, will release them from the obligation of the guaranty. In the *Hunter* case the change construed was a shortening of the time which the loan was to run from the period of six months to four months; and in the *Rushton* case the change construed was an extension of the time of stay of sale in a

foreclosure proceeding from the period of nine months designated by statute to the period of twelve months.

In the case of *Hall v. Rogers,* 113 Neb. 290, it is held: "The payment of interest or a part of the principal on a note by a principal debtor, without the authority or consent of the surety, will not stop the running of the statute of limitations as to the surety."

"A payment by one of several joint debtors on a note, without authority or consent of the others, will not toll the statute of limitations as to them."

It is held in the case of *Cummins v. Tibbetts,* 58 Neb. 318, that "the statute of limitations begins to run against a contract of guaranty the same moment an action accrues thereon," and that the action upon the separate contract of guaranty for the payment of a promissory note considered in that case was barred in five years from the maturity of the note.

Upon a continuing guaranty a right of action arises with each freshly incurred liability. In the present case the right of action could be single only. Appellant's argument that the guaranty was one of payment, and that the successive renewals were not payments of the preexisting debt, may be sound, but it does not help appellant's situation in the case.

"The promise to guarantee a renewal of the same obligation is meant to define the liability with respect to that obligation rather than to create an added or new liability in the future. The guarantor agrees to be held liable for the particular debt whether evidenced by the original note or by a renewal. Regardless of the number of times the debt is renewed, the cause of action is essentially single and is upon the original guaranty, and it must be brought within the period of limitation prescribed for such a cause." *Baird v. Foss Investment Co.,* 58 N. Dak. 345.

In view of these adjudications and their application to the petition presented, further discussion seems unnecessary, and it clearly appears that the bar of the statute

of limitations had intervened at the commencement of the action.

The judgment of the district court was right and it is

AFFIRMED.