666 P.2d 1085

John A. DIVIZIO and Fannie Divizio, husband and wife; Walter A. Greig and Edna H. Greig, husband and wife; Mrs. Dorothy Zimmerman, a widow; Matt Schiller and Theresa Schiller, husband and wife; Lucien L. Farkas and Elizabeth Farkas, husband and wife; J.E. Walter and Mary Walter, husband and wife, Plaintiffs/Appellants,

v.

KEWIN ENTERPRISES, INC., an Arizona corporation; Arthur L. Kewin and Virginia M. Kewin, husband and wife, d/b/a Highlands Mobile Home Estates, Defendants/Appellees.

No. 2 CA–CIV 4604.

Court of Appeals of Arizona, Division 2.

April 27, 1983.

Rehearing Denied June 1, 1983.

 

Johnston & Grynkewich by Gary S. Grynkewich, Tucson, for plaintiffs/appellants.

Bilby, Shoenhair, Warnock & Dolph, P.C. by David A. Paige, Tucson, for defendants/appellees.

## OPINION

BIRDSALL, Judge.

The appellants, plaintiffs in the trial court, are the owners of lots in Highland Mobile Home Estates, a subdivision in Pima County. The appellees/defendants are the operators of the mobile home estates who also own and manage the common areas. The trial court granted conditional class action certification to this action and by court approved stipulation the case was trifurcated for trial. This order provided that the first stage of the trial, from which this appeal arises, would be:

> "... the Plaintiffs' claim for prospective relief as to their request for an accounting of future assessments made by the owner of the common areas upon lot owners, and will include the question of whether or not the Defendants are required to furnish an accounting and the question of whether or not there is a need for judicial interpretation of the deed restrictions, including Paragraph 15 as well as other paragraphs of the Deed Restrictions ...."

The judgment on this first phase was therefore to be declaratory in nature. The trial court made findings of fact and conclusions of law pursuant to Rule 52(a), Rules of Civil Procedure, 16 A.R.S. The judgment incorporated these findings and conclusions by reference. The judgment also provided that paragraph 15 had to be interpreted to allow the appellees to make certain charges; that they had not "abused" paragraph 15 in any "actionable way" or "enjoyed any excessive profit"; the court found "in favor of the Defendants and against the Plaintiffs and the class members on the claims set forth as part of Phase One of the class

action declaratory judgment action." The judgment awarded attorneys' fees and costs against the individual plaintiffs.

According to the order providing for the trial in three stages, the next stage was to:

"... pertain to the Plaintiffs' claim of breach of contract and/or fraud with respect to the previous lot assessments charged by the Defendants and paid or charged to the class members. The second stage will include presentation of evidence on the Plaintiff's claim that an accounting should have been provided by the Defendants, that the Plaintiffs have suffered damages as a result of the previous assessments, as well as the Plaintiffs' claim for punitive damages. The second stage will also consider the Defendants' claim that class action treatment is not proper as a result of the Plaintiffs' claim of fraud, and will include consideration of the Defendants' request to decertify the class as a result of individual questions predominating over the common questions among the class."

The third stage was to be concerned with a counterclaim.

In its conclusions of law, incorporated in the judgment, the trial court ruled that:

1) The appellees were not required to account to the appellants;

2) The cost of acquiring the common areas from a previous owner was properly included in the assessments;

3) Certain other specific items paid by the appellees were also properly included;

4) It was the appellants' burden to show an expense was not properly included and the test was whether the charge was arbitrary, capricious, grossly negligent or fraudulent.

The trial court found no just reason for delay under Rule 54(b), Rules of Civil Procedure, 16 A.R.S. and entered final judgment as to phase one. This appeal followed.

The appellants have listed sixteen issues for our decision. In view of our disposition of this appeal we do not address each of them individually as such. We reverse and remand.

The Highlands began as a project of the Lusk Corporation which went into bankruptcy in the 1960's. It was purchased from the trustee in bankruptcy by Mr. and Mrs. Kappelusch who are still residents there. They sold to the appellees who in turn sold to Dr. and Mrs. Lundstrom. Mr. Kappelusch and Dr. Lundstrom testified at trial. The Lundstroms apparently defaulted and the appellees again took over the estates. There are 357 individual lots in the development all of which have been sold. The common areas owned by the appellees and their predecessors have always consisted of the streets, swimming pool, clubhouse and office. The appellees' purchase included 12 lots which had been and are used as a storage area for R.V.'s. These units cannot be kept at a residence according to the restrictions. The appellees apparently also dedicated this area as a common area and its income and expenses have been so treated by the appellees.

The Highlands subdivision was recorded in October 1960 with the deed restrictions with which we are concerned. Two amendments of the restrictions have been recorded, neither amending paragraph 15. Generally the deed restrictions pertain to the manner of development in the estates and the quality of life there.

Paragraph 15 pertains to the common (community) areas and the assessments which are the subject of this appeal. It reads as follows:

"15. All Community Areas (Block 1, all streets except Lambert Lane, walkways, drainageways, easements, and all other areas now or hereafter designated by the Company as Community Areas, and all recreational and functional buildings, structures, facilities, landscaping, or other improvements thereon) shall remain the property of the Company. The Company shall maintain and care for such Community Areas, and shall install and maintain such improvements, planting, and landscaping on such portions of said subdivision as the Company shall deem desirable. Each resident of any lot in

said subdivision shall have the right to use the Community Areas in accordance with such rules and regulations as may from time to time be prescribed by the Company and not otherwise. The owner of each lot not owned by the Company shall pay to the Company as compensation for the privileges herein granted and for the services furnished or secured by Company hereunder, such amount as may be assessed ratably against said owner by the Company each month. The amount so assessed shall be that portion of all direct and indirect costs and expenses (plus ten (10%) percent thereof for profit) incurred in the maintenance of said facilities and the furnishing of any and all services hereunder or in connection therewith for use by the owners as the number of lots owned by the owner shall bear to the total of lots owned by all persons other than the Company, provided, however, that the aggregate amount so assessed per lot shall not at any time exceed One Hundred and Eighty Dollars ($180.00) per year, provided that this maximum shall be increased in the same proportion as the cost of living index of the United States Department of Labor increases above such index on the date of recording these restrictions. Any and all charges made by the Company under this paragraph shall, at the time of the assessment provided herein, constitute a lien on the lot against which made and shall be payable within ten days after such charge is made. The Company shall be entitled to enforce its rights hereunder by following the procedure provided for the enforcement of Mechanics and Materialmen's Liens in the State of Arizona. Any claim against the Company shall not constitute a defense nor offset in any action by the Company for nonpayment of any amounts which may be assessed hereunder. This paragraph shall constitute a request by each lot owner for the Company to perform the obligations imposed on it hereunder."

█ Lot assessments have been made since the inception by Lusk, by the trustee, Kappelusch, Kewin, Lundstrom and now the appellees. Accountings have been sporadically furnished by the trustee, Lundstrom and the appellees since 1981. However, the detail in the accountings has varied. The assessments have not been uniformly charged, for example, the trustee and Kappelusch waived the assessment as to certain of the lots. The appellants contend the trial court went beyond phase one in one or more findings and conclusions. We agree. The judgment should not have included the conclusions that the appellees had not "abused paragraph 15" and had not "enjoyed any excessive profit." These questions were reserved for phase 2. The purpose of phase one in that regard was to determine whether it was necessary to have a judicial interpretation of paragraph 15. The record shows both parties in agreement as to this purpose. Our disposition of this appeal fulfills that purpose.

The assessment at time of trial was $21.00 per individual lot. The initial assessment allowed was $15.00. The cost of living had increased from a base of 100 to 324.8 at time of trial, so the assessment could be substantially higher if necessary.

We believe we can fairly summarize the issues by dividing our discussion into the following two areas:

1) Are the appellants entitled to an accounting?

2) For what type of costs may the appellants be assessed?

### Accounting

█ The trial court erred in concluding the appellants are not entitled to accountings. The parties have a fiduciary relationship, one of trust, and the appellees are obligated to furnish accountings. *Young v. Lucas Const. Co.,* 454 S.W.2d 638 (Mo.1970); 1 Am.Jur.2d Accounts and Accountings, § 44, et seq. (1964). The trial court made a finding of fact, number 27, which was apparently the basis for its first conclusion of law:

"27. The petition signed by a majority of the owners of lots in The Highlands with dates of signature on or about Janu-

ary, 1979, (Exhibit U in evidence) relieves the Company from any suggested requirement that it furnish a periodic accounting with respect to the direct and indirect costs and expenses, and receipts, pertaining to maintenance and improvement of the community areas under Paragraph 15 of the Declarations of Restrictions."

Conclusion of Law number 1 recited:

"1. The petition of January, 1979, constitutes a direction to the Company that an accounting is not required to be given by the Company to the lot owners, and the Company is not required to furnish a periodic accounting of costs and expenses and disbursements attributable to improvement and maintenance of the community areas."

The petition to which the trial court refers was signed by some 280 persons who were, according to the recital in the document, lot owners in the Highlands. A note attached to the exhibit says, "THERE ARE 263 PROPERTY OWNERS AT THE HIGHLANDS. THIS PETITION CONTAINS 280 SIGNATURES AND IS REPRESENTATIVE OF 164 PROPERTY OWNERS." The document contained the following recital on each sheet thereof:

"We, the undersigned lot owners of the Highlands Subdivision, do not want Kewin Enterprises, Inc. to furnish accounting reports concerning past or present management operations of the common areas of the Highlands.

We do not want any changes (additions or deletions) to the Declaration of Restrictions D.K. 1687–129–134 inclusive, D.K. 2016–442. D.K. 2080–504.

We are opposed to the legal action (lawsuit) case number 173661 against Kewin Enterprises Inc. D/B/A Highlands Mobile Homes Estates."

The language of the petition does not relieve the appellees from accounting. Both the finding and the conclusion based thereon are unsupported by that document. We understand the appellees' argument may be that since the restrictions provide they may be amended by a majority of the landowners the fact that more than a majority have signed the petition constitutes, in effect, such an amendment.[1] We reject that argument. *Hueg v. Sunburst Farms (Glendale) Mut. Water and Agric. Co.*, 122 Ariz. 284, 594 P.2d 538 (App.1979) is inapposite. The case holds that where restrictions are silent as to how the wishes of the majority of lot owners could be ascertained, a petition was one satisfactory method of making such a determination. However, the petition circulated in *Hueg* stated it was for the specific purpose of revoking the restrictions. Moreover it described the act of signing the petition as a "vote". The petition in the instant case makes no reference to any amendment nor does it purport to be a "vote". It is not an amendment of the restrictions. We question that any purported amendment waiving future accountings would be enforceable. A lot owner is entitled to an accounting if desired. *Young v. Lucas Const. Co., supra; and see Mollohan v. Christy*, 80 Ariz. 141, 294 P.2d 375 (1956). We hold that the appellants are entitled prospectively to accountings relating to future assessments.

### Assessments

▇▇▇ The interpretation of a contract is a matter of law and not a question of fact.

---

1. Amended paragraph 20 of the restrictions provides:

"The covenants herein contained run with the land and, unless otherwise terminated by the Company in accordance with the provisions herein contained, shall bind all persons in interest, all owners of lots, blocks or parcels in said subdivision and their heirs, legal representatives, successors and assigns until January 1, 2000, at which time said covenants shall be automatically extended for successive periods of ten years each unless, by mutual agreement between the Company and owners of a majority in number of lots at or prior to the end of the initial term or any successive period of ten years, said covenants shall be amended, changed or terminated in whole or in part. Such amendments, changes or terminations shall be approved by a majority vote of all lot owners, including the Company, and in such referendum, no lot owner or owners, including the Company, shall have more than one vote, irrespective of number of lots owned and when so approved."

*Polk v. Koerner*, 111 Ariz. 493, 533 P.2d 660 (1975). The deed restrictions constituted a covenant running with the land forming a contract between the owners of the common areas and the individual lot owners. *Duffy v. Sunburst Farms East Mutual Water & Agricultural Company, Inc.*, 124 Ariz. 413, 604 P.2d 1124 (1979). When the language of a written contract is unambiguous it must be interpreted from the language used in light of the circumstances. *Ness v. Greater Ariz. Realty, Inc.*, 117 Ariz. 357, 572 P.2d 1195 (App.1977). The language in deed restrictions must be given its plain, ordinary meaning. *Duffy v. Sunburst Farms, supra; Catalina Foothills Estates, Inc. v. Shull*, 126 Ariz. 484, 616 P.2d 944 (App.1980). Only when the written instrument is ambiguous should the court admit extrinsic evidence of its meaning and even then a restrictive covenant will be resolved in favor of the free use of land. *Riley v. Stoves*, 22 Ariz.App. 223, 526 P.2d 747 (1974); *Duffy, supra.*

The trial court erred in its interpretation of paragraph 15.[2] Whether this error was the result of the use of extrinsic evidence, such as the type of charges made by prior owners, or merely from the court's own understanding of the paragraph is irrelevant. The paragraph is not ambiguous and can be interpreted without resort to any extrinsic evidence. *See Duffy, supra.*

The first and only language in paragraph 15 which is directed to the assessment is the long sentence: "The amount so assessed shall be that portion of all direct and indirect costs and expenses (plus ten (10%) percent thereof for profit) incurred in the maintenance of said facilities and the furnishing of any and all services hereunder or in connection therewith for use by the owners as the number of lots owned by the owner shall bear to the total of lots owned by all persons other than the Company, provided, however, that the aggregate amount so assessed per lot shall not at any

time exceed One Hundred and Eighty Dollars ($180.00) per year, provided that this maximum shall be increased in the same proportion as the cost of living index of the United States Department of Labor increases above such index on the date of recording these restrictions." The language in that sentence which defines the type of costs to be assessed is:

"The amount so assessed shall be that portion of *all direct and indirect costs and expenses . . . incurred in the maintenance* of said facilities *and the furnishing of any and all services hereunder or in connection therewith for use by the owners . . . .*" (emphasis supplied)

This language, given its ordinary meaning, limits the charges which may be included in the assessments to:

1) the *maintenance* of the common areas as for example, repairs, painting, road surfacing, and

2) furnishing *services* as for example, cleaning the pool, bookkeeping, office work, utility expense, landscaping, etc.[3]

It is not our function to provide an exhaustive list of all types of costs which might be properly included. Suffice it to say we are certain that what we have said and what we are about to say concerning items which can be included, will give the trial court adequate guidance.

During the trial an accountant gave an income tax definition of maintenance, i.e., "The cost of incidental repairs which neither materially add to the value of the property nor appreciably prolong its life, but keep it in an orderly, efficient operating condition may be deducted as an expense provided the plant or property account is not increased by the amount of such expenditure." The parties do not seriously argue that maintenance should be so strictly limited here. The court is entitled to consider the purposes of the instrument

---

2. This does not mean all of the findings and conclusions are erroneous as we subsequently discuss.

3. Many services can be either direct or indirect maintenance, for example, the office work includes contacting others to perform maintenance.

in determining its meaning and the intent of the parties. *Riley v. Stoves, supra.*

Paragraph 15 has a dual purpose:

1) To assure the individual lot owner and residents that the common areas will be maintained in a manner compatible with their use and enjoyment of them and that the services necessary to assure this use and enjoyment will be furnished. The appellees are charged with this responsibility.

2) To assure the appellees that they will be reimbursed for the actual costs of providing this maintenance and furnishing these services and also receive a return on their investment. The lot owners are charged with this payment responsibility.

 The language used to define the general type of costs and expenses which could be included, and therefore be recovered by the appellees, was very broad, "all direct and indirect". No doubt it was the intention of the paragraph that the appellees, subject to the limitations in the paragraph, be fully repaid for their expense, even if indirect, as for example, insurance cost. No doubt one reason for this generous language was because the facilities and services were to be used in conjunction with the appellants' homes.

The language, however, does not constitute a license to charge expenses which are not directly or indirectly incurred in maintenance or services. The appellants have contested some of the items included in the assessment computation. We agree that certain of these costs are improperly included.

The trial court found the following items of direct and indirect cost and expense are properly charged by the Company as part of the monthly assessment pursuant to Paragraph 15 of the Declaration of Restrictions: fringe benefits furnished to employees of Kewin Enterprises, Inc. hired to improve and maintain the community areas, including medical and dental expenses, reasonable life insurance benefits, and other customary and usual fringe benefits furnished by corporations to its employees. The evidence in this regard shows that, unlike the Lusk Corporation, the corporate appellee, Kewin Enterprises, Inc. was a closely held family corporation. The individual appellees, Arthur L. and Virginia M. Kewin, husband and wife, were its owners, directors, officers and employees. A business corporation, like Lusk, with many employees, may be able to justify "fringe benefits" such as paid life and health insurance for its employees and as a result include a proportionate part of that expense in a charge to the Highlands for maintenance or services. However, for the Kewins to charge for the personal benefits allowed by the trial court is another matter. We hold that such "fringe benefits" may not be included in the assessment base.

The trial court also concluded that the cost of purchasing the common areas and the debt service thereon were "... proper direct and indirect cost and expense of improvement and repair of the community areas ...." This conclusion would mean that the appellees could purchase real property for use as a common area, retain title, and recover their entire cost through assessments. Then, upon its resale, new purchasers could do the same. There would be no limit to the number of times the lot owners might be assessed for the same properties. We hold this to be an erroneous interpretation of the language in paragraph 15.

The clubhouse and pool area were expressly found to be community (common) areas in the trial court's finding number 25. Although other findings infer that the office and R.V. storage area are also common areas there is no like express finding as to those areas. We conclude that they are common areas.

Finding number 40, which was incorporated with approval by reference in conclusion 4 found:

"The Declarations of Restrictions allow the Company to install, improve, provide additions to and to refurbish and repair structures, facilities, streets, roads in the community areas, and the direct and indirect cost and expense of such work is properly charged under the assessment

provision of Paragraph 15 of the Declaration of Restrictions."

To the extent that this finding and conclusion determine that the appellees may assess for the cost of installing or providing new structures or facilities we hold this is an erroneous interpretation of the restrictions, since such costs would not be for maintenance or services.

The appellees furnished a detailed accounting for the period January 1981 through January 1982. The trial court, in finding 31, found all costs and expenses shown therein to be properly included. This finding was incorporated in legal conclusion 4. Except for those costs we have discussed, we agree. Specifically so there will be no question we note that the statements include a "salary" or "wage" for both Mr. and Mrs. Kewin in addition to the 10% profit "per deed restrictions". Since the evidence established the Kewins were both personally performing maintenance and services this was eminently correct. We also approve conclusion of law 4 except those parts we have expressly disapproved.

■ The trial court tested the challenged items in the assessment by deciding if their inclusion was arbitrary, capricious, grossly negligent or fraudulent. Although we agree that a cost not passing these tests should be excluded, we hold that a proper interpretation of the deed restrictions requires a different test. The appellees argue that the test employed by the trial court is proper since paragraph 15 provides they are to install and maintain such improvements, planting and landscaping ... as the company (appellees) *shall deem desirable.* They argue this gives them discretion which is limited only by the arbitrary and capricious standard. We disagree. The proper test, as set forth in paragraph 15, is whether a cost is directly or indirectly related to providing maintenance or services.

We vacate the judgment, including the assessment of attorneys' fees and costs, and direct the trial court to enter declaratory judgment on phase one consistent herewith.

HOWARD, C.J., and HATHAWAY, J., concur.