IN RE ESTATE OF RICHARD E. FISCHER, DECEASED.
DUANE J. FISCHER, PERSONAL REPRESENTATIVE OF THE ESTATE OF RICHARD E. FISCHER, DECEASED, APPELLANT, V. CURTIS STATE BANK, CURTIS, NEBRASKA, APPELLEE.

419 N.W.2d 860

Filed March 4, 1988.   No. 86-157.

Jeffrey M. Cox of Person, Dier, Person & Osborn, for appellant.

Stephen P. Herman, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

SHANAHAN, J.

In November of 1976, Pamela Gay Hazen entered an agreement with the Curtis State Bank to obtain an extension of credit for the operating expenses of "The Flower Basket," a floral and gift shop which was Pamela's sole proprietorship. In conjunction with that agreement, Pamela signed a security agreement, granting the bank a security interest in the assets of the Flower Basket. According to an officer and director of the bank, in the summer of 1977 the bank made a loan "[i]n the neighborhood of $10,000.00" which was "credit extended to Pam Hazen doing business as The Flower Basket, for operating expenses." On September 23, 1977, Richard E. Fischer, Pamela's father, signed a guaranty of $16,000 in favor of the bank "to give and continue to give credit to Pamela Gay Hazen DBA: FLOWER BASKET."

Subsequently, in June 1978, Pamela and her husband, Dennis, signed a security agreement, granting the bank a security interest in their 1978 Chevrolet van and securing some unspecified indebtedness of Pamela and Dennis Hazen. On February 20, 1980, Pamela's parents, Richard E. Fischer and Elane L. Fischer, signed a guaranty of $25,000 to the bank "to give and continue to give credit to Pamela Gay Hazen." That guaranty contained no reference to the Flower Basket or Dennis Hazen. The exact amount of the indebtedness owed by Pamela Gay Hazen to the bank on February 20, 1980, is undisclosed in the record.

On October 21, 1983, Richard and Elane Fischer signed another guaranty in a preprinted form containing:

I hereby request ___CURTIS STATE BANK of Curtis, NE 69025___ hereinafter called the "Bank" to give and continue to give credit to ___Pam and Dennis Hazen___ and in consideration of all and any such credit given, I hereby unconditionally guarantee prompt payment to the Bank when due, of any and all notes at any time made by said debtor to said Bank and any renewal or renewals thereof, together with any other indebtedness (now existing or hereafter incurred) of said debtor to said Bank arising from borrowings, overdrafts, notes discounted or otherwise.

That guaranty also limited the liability of Richard and Elane Fischer to $40,000 and contained a further provision:

This Guaranty shall continue indefinitely and nothing shall affect my liability except receipt by the Bank of written notice from me of the discontinuance thereof, or notice of my death, but termination shall not affect then existing obligations, and in the event of my death, my obligations shall continue in full force and effect against my estate; and my liability in respect thereto shall continue although such notes, indebtedness or liability may, from time to time, be extended or renewed.

Richard E. Fischer died in January 1984, a fact which the bank learned in January 1984. The record does not disclose the following, if extant at Richard E. Fischer's death: Terms and the amount of any indebtedness owed by Pamela Hazen or Dennis Hazen to the bank; whether any Hazen debt was a joint obligation of Pamela and Dennis or whether such debt was the individual obligation of Pamela or Dennis; and whether any Hazen debt was evidenced by a promissory note made jointly by Pamela and Dennis or made solely by either of them. Nevertheless, in the light of events after Richard E. Fischer's death, it becomes readily apparent that Pamela Hazen must have owed approximately $41,700 to the bank at the date of her father's death. Approximately 2 months after the death of Richard E. Fischer, that is, on February 27, 1984, Pamela Hazen signed a preprinted promissory note, denominated a "FLOATING RATE PROMISSORY NOTE," in favor of the bank and in the principal amount of $41,700. In reference to the promissory note of February 27, 1984, a bank officer explained:

This was the loan that [the bank] renewed on February 27, 1984, for Pam Hazen doing business as The Flower Basket. The proceeds were advanced to renew a $39,000. debt plus $2,077.39 accrued interest, plus $22.61 new cash. It was agreed to at that time that the sale and/or auction of The Flower Basket would be made for reduction by the notes maturity on April 1, 1984.

The note specified that principal and interest were due in a single payment on April 1, 1984. At the signature line for the

promissory note there appears:

FLOWER BASKET, Curtis, NE 69025

/s/ Pam Hazen                    Owner

The promissory note of February 27, 1984, does not refer to any debt which Dennis Hazen may have owed to the bank, and the note was not signed by Dennis Hazen or otherwise acknowledged by him as evidence of indebtedness to the bank.

In April 1984 Pamela Hazen defaulted on her $41,700 note. However, by a payment made at the bank's drive-in window on June 25, Pamela paid $160.08 as interest on the February 27, 1984, promissory note to the bank.

On August 21, 1984, the attorney for the bank wrote to "Dennis Hazen or Pamela G. Hazen dba Flower Basket" and informed the Hazens about a prospective private sale of their 1978 Chevrolet van on August 27, 1984, pursuant to their security agreement signed on June 27, 1978. Also, on August 21, 1984, that same attorney for the bank wrote to "Pamela Gay Hazen dba Flower Basket" and stated that the physical assets of the Flower Basket would be sold at private sale on August 27, 1984. The bank never notified the personal representative of the Richard E. Fischer estate concerning the sale of the Flower Basket assets. As indicated in the letters from the bank's attorney, the private sales did take place. From the sale of the Flower Basket assets, the bank received $9,500 for which Pamela Hazen was given credit on her $41,700 promissory note to the bank. Part of the proceeds from the sale of Hazens' van was applied to the debt on the van, and the balance of the sale proceeds was then applied on the $41,700 note signed by Pamela (Pam) Hazen on February 27, 1984. Because no further payments were made on the $41,700 promissory note, the bank filed its guaranty-based claim against the Richard E. Fischer estate. The personal representative for the estate gave "Notice of Disallowance" concerning the bank's claim. On the bank's "Petition for Allowance of Claim" filed in the estate of Richard E. Fischer, deceased, the county court for Frontier County entered judgment in favor of the bank for $27,000, an amount remaining after credits applied to Pamela Hazen's promissory note of February 27, 1984. The personal representative

appealed to the district court, which affirmed the county court's judgment.

In his brief, the personal representative of the Richard E. Fischer estate contends that the estate is not liable on the guaranty because the bank failed to notify the personal representative about the private sale of the Flower Basket's assets. As the premise for his contention, the personal representative relies on the notice requirement in Neb. U.C.C. § 9-504(3) (Reissue 1980). However, there is a more fundamental flaw in the county court's judgment for the bank.

Regarding an appeal in a civil case, Neb. Rev. Stat. § 25-1919 (Reissue 1985) directs that an appellant's brief specify the errors in the judgment claimed to be erroneous, but also provides: "The Supreme Court may, however, at its option, consider a plain error not specified in appellant's brief." Neb. Ct. R. of Prac. 9D(1)d (rev. 1986) in part provides: "The court may, at its option, notice a plain error not assigned."

Plain error may be found on appeal, when an error, unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would cause a miscarriage of justice or damage the integrity, reputation, and fairness of the judicial process. See, *Gluckauf v. Pine Lake Beach Club, Inc.*, 78 N.J. Super. 8, 187 A.2d 357 (1963); *State v. Thompson*, 59 N.C. App. 425, 297 S.E.2d 177 (1982); *People v. Simmons*, 67 Ill. App. 3d 1045, 385 N.E.2d 758 (1978). Cf., *Enyeart v. Swartz*, 218 Neb. 425, 355 N.W.2d 786 (1984) (failure of trial court, although not requested, to instruct on proximate cause in a negligence action; plain error); *State v. Beyer*, 218 Neb. 33, 352 N.W.2d 168 (1984) (charge of theft but no penalty provided by statute; plain error); *Dell v. City of Lincoln*, 168 Neb. 174, 95 N.W.2d 336 (1959) (neither pleading nor proof of a city charter provision on which trial court relied in its decision; plain error).

At the time of oral argument in this appeal (December 2, 1987), we had not as yet issued the opinion in *Federal Deposit Ins. Corp. v. Heyne, ante* p. 291, 417 N.W.2d 162 (1987), which was filed on December 31, 1987, and disposes of the appeal in the present case. In *Federal Deposit Ins. Corp. v. Heyne, supra*, the plaintiff, as receiver for the insolvent Uehling State Bank,

sought a recovery based on Heyne's guaranty, which stated:

> "I hereby request Uehling State Bank to give and continue to give credit to *Robert & MaeNell Johnson* and in consideration of all and any such credit given, I hereby unconditionally guarantee prompt payment to the Uehling State Bank when due, of any and all notes at any time made by said debtor to said bank and any renewal or renewals thereof, together with any other indebtedness (now existing or hereafter incurred) of said debtor to said bank arising from overdrafts, notes discounted or otherwise."

(Emphasis in original.) *Ante* p. 292-93, 417 N.W.2d at 163. According to the petition against Heyne, Robert E. Johnson had borrowed from the Uehling State Bank but failed to pay his promissory note for the loan, a note which Johnson alone had signed. When the FDIC filed its petition, alleging a claim based on the Heyne guaranty, Heyne demurred. After the district court overruled the demurrer, Heyne elected to stand on his demurrer, and a default judgment was entered against Heyne on account of the guaranty in question. On appeal, this court reversed the default judgment against Heyne. Holding that the district court had improperly overruled Heyne's demurrer, we stated:

> The issue here is whether the guaranty agreement covers both the joint and individual debts of Robert and MaeNell Johnson. The FDIC asserts that this is a question of fact, while the appellant asserts that it is a question of law.
>
> Nebraska adheres to the rule of strict construction of guaranty contracts. In *Hunter v. Huffman*, 108 Neb. 729, 189 N.W. 166 (1922), this court said: "The rule of *strictissimi juris* applies in determining the effect of a contract of guaranty. When the meaning of the contract is ascertained, or its terms are clearly defined, the liability of the guarantor is controlled absolutely by such meaning and limited to the precise terms." (Syllabus of the court.) See, also, *Bash v. Bash*, 123 Neb. 865, 244 N.W. 788 (1932) (quoting and approving this language from *Hunter*). We have also held that the liability of a guarantor is not to be enlarged beyond the strict terms of the contract. See *Furst*

*v. Kruger*, 132 Neb. 54, 271 N.W. 156 (1937). With these rules in mind, we hold that the guaranty agreement was clear and unambiguous and required no construction. The agreement guaranteed the debts of Robert *and* MaeNell Johnson, and not Robert *or* MaeNell Johnson. The guaranty does not, therefore, extend to cover the individual debts of Robert Johnson.

Although this precise issue has not been litigated often, several other courts have come to the same conclusion on similar facts. See, *Hamilton Trust Co. v. Shevlin*, 156 A.D. 307, 141 N.Y.S. 232 (1913), *aff'd* 215 N.Y. 735, 109 N.E. 1077 (1915) (court holds that guaranty covering loans to five persons does not cover loans made to four of the five persons, and the judgment sustaining the demurrer was therefore proper); *O'Grady v. Bank*, 296 N.C. 212, 250 S.E.2d 587 (1978) (guaranty covered only the joint and several debts of the three individuals listed as obligors).

*Ante* p. 293-94, 417 N.W.2d at 163. Thus, as this court recognized in *Federal Deposit Ins. Corp. v. Heyne, supra*, a guaranty, which designates a joint indebtedness as the primary or principal obligation, covers only the joint debt of the principal or primary obligors and does not cover the individual debt of either primary or principal obligor.

With the exception of the debtors' names, the *Heyne* guaranty is almost a verbatim counterpart to the guaranty signed by Richard E. Fischer and Elane L. Fischer. The Fischer guaranty related to credit extended to "Pam and Dennis Hazen," a joint obligation, and did not pertain to credit extended to Pamela (Pam) Hazen alone. The basis of the bank's claim against the Fischer estate was Pamela Hazen's default on the $41,700 promissory note to the bank, a note signed by Pamela Hazen alone. The Fischer guaranty covered only the joint debt of Pamela and Dennis Hazen and, therefore, did not cover Pamela Hazen's individual indebtedness to the bank.

To impose liability on the estate of Richard E. Fischer, deceased, and, in effect, impose liability on the heirs or devisees of Richard E. Fischer, would necessitate our rewriting the unambiguous guaranty concerning a joint debt and thereby

convert the instrument into a guaranty covering a debt incurred by Pamela Hazen alone. We decline to make such revision. The county court's judgment, based on the Fischer guaranty, is incorrect as plain error.

Therefore, we reverse the district court's judgment and remand this matter to the district court with direction to reverse and vacate the judgment entered in the county court in favor of the bank and against the estate of Richard E. Fischer, deceased.

REVERSED AND REMANDED WITH DIRECTION.