LARRY R. BOYLES AND OLGA J. BOYLES, APPELLANTS, V. GARY J. HAUSMANN AND RENEE S. HAUSMANN, HUSBAND AND WIFE, ET AL., APPELLEES.

509 N.W.2d 676

Filed December 21, 1993. No. A-92-204.

Nile K. Johnson, of Johnson & Mock, for appellants.

Gregory P. Drew for appellees.

CONNOLLY, IRWIN, and WRIGHT, Judges.

IRWIN, Judge.

Larry R. and Olga J. Boyles, landowners in Pioneer Hills Subdivision, brought suit seeking a declaratory judgment regarding whether the defendants, also landowners in the subdivision, could amend an agreement containing restrictive covenants pertaining to the subdivision so as to include a setback provision for each lot. The district court found generally for the defendants and dismissed the Boyleses' petition. The Boyleses subsequently perfected this appeal. For the reasons recited below, we reverse the judgment and remand the cause with directions.

## SCOPE OF REVIEW

An action for declaratory judgment under the provisions of Neb. Rev. Stat. § 25-21,149 et seq. (Reissue 1989, Cum. Supp. 1992 & Supp. 1993) is sui generis; whether such action is to be treated as one at law or one in equity is to be determined by the nature of the dispute. *Drew v. Walkup*, 240 Neb. 946, 486 N.W.2d 187 (1992). In the case at bar, the Boyleses seek only a declaratory judgment of their rights under the covenant agreement. In an appeal from a declaratory judgment raising issues of law, the appellate court has an obligation to reach a conclusion independent of the conclusion reached by the trial court. *State Bd. of Ag. v. State Racing Comm.*, 239 Neb. 762, 478 N.W.2d 270 (1992); *State ex rel. Spire v. Northwestern Bell Tel. Co.*, 233 Neb. 262, 445 N.W.2d 284 (1989).

## FACTS

In 1973, the Pioneer Hills Subdivision was platted. The subdivision was subject to a pipeline easement. Additionally, the original landowners of the subdivision entered into an agreement adopting specific restrictive covenants which, according to covenant L, were to

> run with the land and continue until January 1, 1983, after which time they shall be automatically extended for successive periods of five years, unless an instrument signed by a majority of the then owners of said land shall

have been recorded in the office of the County Clerk of Washington County, Nebraska, agreeing to change same in whole or in part.

This agreement was recorded in the Washington County clerk's office.

In 1976, the then current landowners entered into a separate agreement to share the costs for the maintenance and repair of a water use system for the subdivision. The agreement provides that it "shall be binding upon the parties hereto, their heirs, and assigns and successors in title of interest." This agreement was signed by a majority of the then current landowners and was recorded in the Washington County clerk's office. In 1977, the Boyleses purchased their lot and were aware of both of these recorded agreements.

In April 1983, after the principal 10-year time period from the restrictive covenant agreement had expired, the then current landowners amended the agreement to reflect changes in covenants E, H, I, J, K, and L. The changes to covenants E and H through K all concerned topics which were discussed in the original 1973 agreement. The changes could be characterized as clarifications of the existing covenants, resulting in less restrictive covenants. The change to covenant L provided: "Change 1983 to 1988." This particular amendment changed the language in covenant L to read:

These covenants . . . shall run with the land and continue until January 1, 1988, after which time they shall be automatically extended for successive periods of five years, unless an instrument signed by a majority of the then owners of said land shall have been recorded in the office of the County Clerk of Washington County, Nebraska, agreeing to change same in whole or in part.

This agreement was signed by the Boyleses.

In January 1990, 2 years after the principal 5-year period from the 1983 agreement had expired, the agreement was rewritten. The new agreement was essentially identical to the 1983 covenant agreement, except for the addition of an entire section regarding water use regulations. This new section relates to the water system agreement which the landowners signed in 1976. The 1990 agreement also provided that

[t]hese covenants, water use regulations, restrictions and conditions shall run with the land and continue until January 1, 1995, after which time they shall be automatically extended for successive periods of five years, unless an instrument signed by a majority of the then owners of said land shall have been recoded [sic] in the office of the County Clerk . . . agreeing to change same in whole or in part.

This 1990 agreement was signed by owners of 12 of the 18 lots, including Larry Boyles. The agreement was recorded in February 1990.

In August 1990, a majority of the landowners attempted to amend the January 1990 agreement to include the following under covenant C: "1. NO RESIDENTIAL STRUCTURE OR OUTBUILDING SHALL BE PLACED WITHIN 120' OF PIONEER HILLS ROAD." The existing covenant C provided: "No residential structure shall be erected on any building lot which is smaller in area than the original plotted [sic] number lot on which it is erected."

The Boyleses assert on appeal that the August 1990 alleged covenant amendment, establishing a setback of 120 feet from the road, creates a new covenant, not an amendment to an existing covenant, and is therefore invalid.

## ANALYSIS

The determination of this appeal rests upon the construction of the agreements between the parties, which is a matter of law. See *Baker v. St. Paul Fire & Marine Ins. Co.*, 240 Neb. 14, 480 N.W.2d 192 (1992). The Boyleses urge this court to adopt case law from surrounding jurisdictions which have refused to allow a majority of landowners in a subdivision subject to restrictive covenants to create a new covenant or impose harsher covenants upon the subdivision. See, *Lakeland Prop. Owners Ass'n v. Larson*, 121 Ill. App. 3d 805, 459 N.E.2d 1164 (1984) (holding that where a grantee takes title without clear notice in the current restrictive covenants that a majority of the lot owners may impose an assessment upon his property, the majority may not attempt to amend the covenants to impose such a burden); *Van Deusen v. Bussmann*, 343 Mo. 1096, 125

S.W.2d 1 (1938) (holding that the language in a restrictive covenant authorizing modification of the covenant did not authorize the imposition of a harsher restriction). Cf. *Zito v. Gerken*, 225 Ill. App. 3d 79, 587 N.E.2d 1048 (1992).

■ Despite the fact that the Boyleses do not assign as error a misinterpretation of the agreement relating to *when* the current landowners may effectuate a change in the agreement, we cannot review the documents in this case without recognizing this plain error. Plain error may be found on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would cause a miscarriage of justice or damage the integrity, reputation, and fairness of the judicial process. *Baker's Supermarkets v. Feldman*, 243 Neb. 684, 502 N.W.2d 428 (1993); *Wichman v. Naylor*, 241 Neb. 249, 487 N.W.2d 291 (1992); *In re Estate of Fischer*, 227 Neb. 722, 419 N.W.2d 860 (1988). Since we are determining the rights of these parties on the basis of a contractual interpretation, the issue of whether the August 1990 amendment was a harsher restriction or a new restriction is no longer a justiciable issue between the parties and need not be addressed. This is true even in the context of an action for declaratory judgment. See, *State v. Nebraska Assn. of Pub. Employees*, 239 Neb. 653, 477 N.W.2d 577 (1991); *Custer Public Power Dist. v. Loup River Public Power Dist.*, 162 Neb. 300, 75 N.W.2d 619 (1956).

■ The Nebraska Supreme Court has held that the language in a contract is to be accorded its plain and ordinary meaning as understood by an average or reasonable person. *Baker's Supermarkets v. Feldman, supra.* A close review of the language of the original 1973 covenant agreement reveals that the covenants were to run with the land "until January 1, 1983, after which time they shall be automatically extended . . . unless an instrument signed by a majority of the then owners of said land shall have been recorded . . . agreeing to change same in whole or in part." This language was incorporated into the 1983 agreement except that the January 1, 1983, date was changed to January 1, 1988. The parties did not try to change any part of the 1973 agreement during the 10-year principal period despite the fact that a water use system had been installed on the

property in 1976. A separate agreement was created for this purpose. From 1983 through 1988, arguably the second principal period, the parties did not attempt to change the agreement. In January 1990, after the 1983 agreement's 5-year principal period had expired, the parties changed the covenant agreement to include a section dealing with the water system. They also changed the language so that the 1990 agreement provided:

> These covenants, water use regulations, restrictions and conditions shall run with the land *and continue until January 1, 1995, after* which time they shall be automatically extended for successive periods of five years, unless an instrument signed by a majority of the then owners of said land shall have been recoded [sic] in the office of the County Clerk . . . agreeing to change same in whole or in part.

(Emphasis supplied.)

We interpret this language to mean that the 1990 covenants are binding for 5 years, *after* which time they may be changed by a majority of the property owners. This is supported by cases from other jurisdictions.

In *Kauffman v. Roling*, 851 S.W.2d 789, 793 (Mo. App. 1993), the agreement provided that the restrictive covenants would be binding for 25 years "except as otherwise provided herein, after which time said covenants shall be automatically extended for successive periods of twenty-five (25) years unless an instrument signed by two-thirds of the then owners of the lots has been recorded . . . ." (Emphasis omitted.) After reviewing the entire agreement, the Missouri appellate court held that there was no provision for amendment by less than a unanimous vote of the parties to the agreement prior to the expiration of the 25-year period. In *Hill v. Rice*, 505 So. 2d 382, 383 (Ala. 1987), the original covenant agreement provided that the restrictions

> " 'shall be binding upon all parties and persons claiming under them until Jan. 1, 1980, at which time said covenants and restrictions shall automatically be extended for successive periods of ten (10) years, unless by vote of majority of the then owners of the lots it is agreed to

discontinue or to change said covenants . . . .' "
The plaintiff attempted to assert that an agreement to eliminate the restrictive covenants made by a majority of the landowners in 1985 was invalid because the original covenant agreement required that the 10-year period must automatically be extended. The Alabama Supreme Court stated that "[w]hile it is clear that the restrictions were binding upon all parties and persons claiming under them until January 1, 1980, it is not clear that the intent of the covenants was that a majority of the owners could not agree to remove the restrictions after that date." (Emphasis omitted.) *Id.* at 384. Consequently, the court found that a majority of the then owners could eliminate the covenants in 1985. In *Johnson v. Howells*, 682 P.2d 504, 505 (Colo. App. 1984), the agreement provided:

> "These covenants are to run with the land and shall be binding on all parties and all persons claiming under them for a period of twenty (20) years from the date hereof after which time said covenants shall be automatically extended for a successive period of 20 years unless an instrument signed by sixty percent of the then owners of the property has been recorded, agreeing to change said covenants in whole or in part."

The appellate court held that the plain meaning of the agreement was that "the covenants will be binding for twenty years, after which time they are automatically extended unless sixty percent of the property owners agree to change them and record an instrument to that effect." (Emphasis omitted.) *Id.* The court further stated that if the owners had intended to allow amendments at any time, then they would have had no need to include reference to a 20-year period in the first place.

See, also, *Dauphin Island, etc. v. Kuppersmith*, 371 So. 2d 31 (Ala. 1979) (holding that amendments to covenants could not be effectuated by a majority of the lot owners until the end of the 25-year period following the adoption of the covenants); *White v. Lewis*, 253 Ark. 476, 487 S.W.2d 615 (1972) (holding that the restrictive covenants could not be amended prior to the expiration of the initial 25-year period); *Perkins v. B & W Contractors, Inc.*, 439 So. 2d 652 (La. App. 1983) (holding that amendments to restrictive covenants were valid even though

they were filed before expiration of original period, because the amendments were not effective until the original period had expired).

Although case law from other jurisdictions holds that a unanimous vote of the landowners can effectuate amendment of the covenants during the original period, such is not the situation before us. See, *Kauffman v. Roling, supra*; *Johnson v. Howells, supra*. Here, a mere majority of the current landowners attempted to change the January 1990 agreement during the principal period, in contravention of the terms of the agreement. They did not have the authority to change the January 1990 agreement in August 1990, and it was plain error for the trial court to find in favor of the defendants. The judgment of the district court is reversed, and the cause is remanded for an order to issue finding that the attempted amendment is invalid.

REVERSED AND REMANDED WITH DIRECTIONS.

WRIGHT, Judge, concurring.

I concur in the majority's conclusion that the attempted amendment to the covenant in August 1990 was invalid. As the majority points out, in January 1990, 2 years after the principal 5-year period for the 1983 agreement had expired, the agreement was rewritten to provide that the covenants would run with the land and continue until January 1, 1995. The August 1990 attempt to amend the covenant during the principal term was invalid.

I also believe the attempt to amend the covenant was invalid for another reason. When the Boyleses purchased the property, there was no existing setback of 120 feet from Pioneer Hills Road. Landowners in a subdivision may not, by a majority vote, create new covenants which restrict the use of the land held by a minority of the landowners. In my opinion, any attempt to place greater restrictions on the use of the land by amendment of existing covenants would require the vote of all landowners in the subdivision. It is for this additional reason that I believe the attempt by the majority of the landowners to amend the covenant was void.