909 P.2d 393

**Donald B. SCHOLTEN and Claudia Penny Webster–Scholten, Co–Trustees of the Webster–Scholten–Scholten 1991 Trust dated December 17, 1991, Plaintiffs–Appellants,**

**v.**

**BLACKHAWK PARTNERS, a California partnership; Robert A. Bird and Laurie G. Bird, husband and wife; Marlon Bird, a married man; Phillip T. Larson and Kathryn H. Larson, husband and wife; Richard F. Peterson and Nancy C. Peterson, husband and wife, Defendants–Appellees.**

No. 1 CA–CV 93–0245.

Court of Appeals of Arizona, Division 1, Department C.

March 23, 1995.

Order Granting Reconsideration Oct. 3, 1995.

defendants-appellees Blackhawk, Bird and Larson.

Law Offices of William Lee Eaton by William Lee Eaton, Prescott, for defendants-appellees Peterson.

## OPINION

WEISBERG, Judge.

Plaintiffs sued for a declaratory judgment holding that an amendment to the restrictive covenants of the Willow Creek Heights Subdivision was not yet in effect. The trial court granted defendants' motion for summary judgment, thereby concluding that the subject amendment had taken effect. We, however, conclude otherwise.

### FACTS AND PROCEDURAL HISTORY

The parties own lots in the Willow Creek Heights Subdivision ("subdivision"), which are subject to a number of restrictive covenants created on August 23, 1960, when the Amended Declaration of Restrictions was recorded in the Yavapai County Recorder's Office.

The Amended Declaration of Restrictions includes the following "duration clause":

> The foregoing restrictions and covenants shall run with the land and shall be binding on all persons owning any of said lots in WILLOW CREEK HEIGHTS until February 3, 1970, at which time said covenants shall be automatically extended for successive periods of ten years each, unless by vote of a majority of the then owners of said lots in said WILLOW CREEK HEIGHTS, it is agreed to change the said covenants in whole or in part.

When no further amendments were filed, the restrictive covenants automatically extended themselves for successive ten-year periods on February 3, 1970, 1980, and 1990.

In August 1992, defendants attempted to amend the then-current restrictive covenants. The proposed amendment provided for the reduction of the minimum lot size from one acre to 18,000 square feet. After obtaining the necessary signatures, defendants filed the proposed amendment, together with a subdivision plat resubdividing their

Boyle, Pecharich, Cline & Whittington by J. Jeffrey Coughlin, Prescott, for plaintiffs-appellants.

Favour, Moore, Wilhelmsen & Schuyler, P.A. by David K. Wilhelmsen, Prescott, for

own lots, in the Yavapai County Recorder's Office.

Plaintiffs then filed this lawsuit to obtain a declaration that the amendment was not yet in force and that defendants' new subdivision plat was null and void. They also sought to enjoin defendants from violating the lot size restriction.

In ruling on cross-motions for summary judgment, the trial court dismissed the plaintiffs' suit, impliedly finding the amendment to be effective when filed. The only issue plaintiffs raise on appeal is whether the trial court incorrectly interpreted the Declaration of Restrictions as allowing the amendment to become effective at the time it was properly adopted rather than at the beginning of the next ten-year renewal period.

### DISCUSSION

■ Restrictive covenants, such as those encumbering the subdivision lots in this case, constitute a covenant running with the land forming a contract between the subdivision's property owners as a whole and the individual lot owners. *Arizona Biltmore Estates Ass'n v. Tezak,* 177 Ariz. 447, 448, 868 P.2d 1030, 1031 (App.1993). The interpretation of a contract is a matter of law and not a question of fact. *Divizio v. Kewin Enterprises, Inc.,* 136 Ariz. 476, 480, 666 P.2d 1085, 1089 (App.1983). Accordingly, this court is not bound by conclusions of law reached by the trial court. *City of Scottsdale v. Thomas,* 156 Ariz. 551, 552, 753 P.2d 1207, 1208 (App. 1988).

In Arizona, as elsewhere, it is common practice for deed restrictions to contain a provision following the same pattern as the one in this case: reciting that the restrictive covenants shall be binding for a fixed number of years after which they shall be automatically extended for additional fixed periods of time unless changed by the vote of a certain percentage of the lot owners. *E.g., Federoff v. Pioneer Title & Trust Co.,* 166 Ariz. 383, 803 P.2d 104 (1990); *Shalimar Ass'n v.*

*D.O.C. Enterprises, Ltd.,* 142 Ariz. 36, 688 P.2d 682 (App.1984). This case, however, is the first in Arizona to raise the issue whether an amendment made during a renewal term becomes effective when properly adopted or upon the beginning of the next renewal term.

The parties have cited several cases from other jurisdictions in which courts have interpreted the duration clause. Most of these cases, however, have analyzed whether an amendment made during the *initial* term may be effective before the initial term is over. *See, e.g., White v. Lewis,* 253 Ark. 476, 487 S.W.2d 615 (1972); *Johnson v. Howells,* 682 P.2d 504 (Colo.App.1984); *Illini Federal Sav. & Loan Ass'n v. Elsah Hills Corp.,* 112 Ill.App.3d 356, 68 Ill.Dec. 340, 445 N.E.2d 1193 (1983); *Robinson v. Morris,* 272 So.2d 444 (La.App.1973); *Kauffman v. Roling,* 851 S.W.2d 789 (Mo.App.1993). In all such cases, the courts have concluded that the duration clause did not allow an amendment to become effective during the initial term.[1]

In reaching that conclusion, these courts have usually stated that the plain and unambiguous language of the provision requires such result, *e.g., Lewis,* 487 S.W.2d at 616; *Morris,* 272 So.2d at 447; and *Roling,* 851 S.W.2d at 793, and that any other interpretation would render meaningless the language establishing the initial and successive terms. *E.g., Howells,* 682 P.2d at 505; *Elsah,* 68 Ill.Dec. at 343, 445 N.E.2d at 1196. Defendants, however, argue that the duration clause is, at best, ambiguous, and that "[r]estrictive covenants are to be strictly construed against persons seeking to enforce them and any ambiguities or doubts as to their effect should be resolved in favor of the free use and enjoyment of the property and against restrictions." *Duffy v. Sunburst Farms East Mut. Water & Agric. Co. Inc.,* 124 Ariz. 413, 417, 604 P.2d 1124, 1128 (1980) (*quoting Grossman v. Hatley,* 21 Ariz.App. 581, 583, 522 P.2d 46, 48 (1974) (citations omitted)). They therefore conclude that the

---

1. We note that the cases sometimes point out that an amendment can take effect at any time if there is a unanimous agreement among the owners. *See, e.g., Howells,* 682 P.2d at 505, *citing* 5 R. Powell, *The Law of Real Property* § 679[1] (P.

Rohan rev. 1981); 2 American Law of Property § 9.23 (A.J. Casner ed. 1952). That is not, however, the situation in this case or in any of the above-cited cases.

subject restrictive covenants are amendable at any time.

Notwithstanding defendants' argument, we must keep in mind that such language is ambiguous only when it can be reasonably construed to have more than one meaning. *Phillips v. Flowing Wells Unified School Dist. No. 8 of Pima County,* 137 Ariz. 192, 669 P.2d 969 (App.1983). Moreover, a contract should be construed to give effect to all its provisions and to prevent any of the provisions from being rendered meaningless. *Norman v. Recreation Centers of Sun City, Inc.,* 156 Ariz. 425, 752 P.2d 514 (App.1988). Applying these rules of construction, we believe the reasoning employed in the cases addressing amendments during the *initial* term is equally persuasive in the case of *renewal* terms. Just as giving effect to an amendment during the initial term would render meaningless the language establishing that initial term, *see Illini,* 68 Ill.Dec. at 343, 445 N.E.2d at 1196; *Morris,* 272 So.2d at 447, so would defendants' interpretation render meaningless the language providing for ten-year extension terms. If amendments could take effect at any time, there would be no purpose in creating renewal terms of ten years. Instead, the duration clause could merely provide that the "covenants shall be in force until, by a majority vote of the owners, it is agreed to change said covenants in whole or in part."

Defendants have suggested three other possible purposes for the ten-year extension provision, none of which we find persuasive. First, without providing support, they argue that the ten-year renewal periods were included to avoid running afoul of the rule against perpetuities. We reject this argument, though, because the rule against perpetuities does not apply to restrictive covenants. *See* 7 *Thompson on Real Property* § 3162 at 121 (1962) ("Restrictive covenants, though unlimited as to time, are not void as transgressing the doctrine of perpetuity.... Restrictions are not estates in land, or even an equitable interest in land.").

Next, again without support, defendants contend that the subject language is designed to avoid any conceivable conflict with state statutes that specify a maximum term for restrictive covenants affecting real property. This argument must also be rejected because, while some states have statutes that place a maximum limit on the duration of restrictive covenants, Arizona does not.

Last, defendants argue that, when the duration of the restrictive covenants is not explicitly stated in the document itself, courts will often construe the duration to be limited to a "reasonable time." *Compare* 5 R. Powell, *Law of Real Property* § 678 at 60–126 (1991) (stating "some courts" have taken this approach) *with* G. Pindar, *American Real Estate Law* § 19–196 (1976) (stating there is "widespread recognition" of this doctrine). The purpose of the "reasonable time" rule is to allow a court to act when burdensome restrictions have outlived their usefulness. *See* Pindar § 19–196. Thus, defendants contend, the ten-year renewal language might have been included to prevent the courts from providing their own view of what is a reasonable time.

Defendants, however, have not provided, and we have not found, any case in Arizona that has applied this "reasonable time" rule. Instead, Arizona courts have merely applied the general rule that the duration of the restrictive covenant is to be determined by the intent of the parties. *Shalimar,* 142 Ariz. at 46, 688 P.2d at 692. Moreover, if the subject property owners are free to alter the restrictions, there is no danger that the restrictions might outlive their usefulness, and therefore no need for a court to limit the application of the covenants to only a "reasonable time."

Thus, defendants have failed to provide even one plausible purpose for the ten-year extension language, leaving only that purpose suggested by plaintiffs. Therefore, in order to give meaning to all of its provisions, we hold that the duration clause requires that an amendment approved during the running of an extension period become effective only at the start of the next successive period.

In reaching our conclusion, we have considered the only two cases of which we are

aware addressing the specific issue of whether amendments approved during an extension period are immediately effective, *Hill v. Rice*, 505 So.2d 382 (Ala.1987); *In re Wallace's Fourth Southmoor Addition to the City of Enid*, 874 P.2d 818 (Okla.App.1994). The duration clauses in *In re Wallace* and *Hill* were nearly identical to the subject provision in the instant case, both requiring automatic ten-year extensions unless changed by majority vote. Nevertheless, these cases reached opposite conclusions. *See Hill*, 505 So.2d at 386 (holding the amendment immediately effective); *In re Wallace*, 874 P.2d at 820–21 (holding the amendment not effective).

The court in *In re Wallace* acknowledged the rule of construction favoring the unencumbered use of real property, but held:

> The clear reference to "periods of ten years" would be meaningless if the covenant could be amended by a majority vote (less than unanimous) at any time on or after [the date on which the initial period ended]. Thus, the plain language of the covenant causes the reference to "periods of ten years" to be a restriction, as to the frequency of amendment by less than a unanimous vote.

874 P.2d at 821. The Oklahoma court thus concluded, as we do, that the duration clause does not permit an amendment made during an extension period to be immediately effective because such a construction would render the ten-year extension provision meaningless.[2]

In *Hill*, however, the Alabama court found the duration clause ambiguous as to when an amendment becomes effective and, therefore, applied the rule of strict construction favoring the free use of land. 505 So.2d at 386.

Unfortunately, the court did not address the argument that such construction rendered meaningless the provision for ten-year extension periods. Nor did the court offer any insight into what purpose the extension period might serve under its interpretation.[3] Perhaps, had the Alabama court considered this argument and given meaning to the ten-year extension period, it would not have interpreted the provision as it did. In any event, we do not find *Hill* persuasive.[4]

■ As a final matter, we note that defendants argue that it would be unfair to delay the effect of an amendment agreed upon by the requisite number of lot owners. This argument, however, ignores the vested rights of other lot owners who are entitled to rely on the provisions of the Declaration of Restrictions.

> It must not be forgotten that while a "restrictive covenant" forbids or requires certain uses of the real property which it covers, it also confers vested rights in those owners who desire to own property where the subject uses are either required or forbidden. One of the vested rights is the method required to amend, change, or abolish the covenant.

*In re Wallace*, 874 P.2d at 821. Accordingly, we conclude that the trial court erred by granting summary judgment in favor of defendants and by denying plaintiffs' cross-motion for summary judgment.

### REQUEST FOR ATTORNEY'S FEES AT TRIAL AND ON APPEAL

Pursuant to Ariz.Rev.Stat.Ann. section 12–341.01(A) and Rule 21(c) of the Arizona Rules of Civil Procedure, plaintiffs request reasonable attorney's fees incurred both at trial and on appeal. Plaintiffs are the successful par-

---

**2.** The court in *In re Wallace* apparently interpreted the provision to also require that the vote to amend take place on the final day of each ten-year period. In the instant case, plaintiffs do not ask for such a limitation and we find no reason for it.

**3.** We note that the *Hill* court may have been influenced by certain unique equitable factors: 1) there was a history of consistent, substantial, and long-term violations of the covenants, 2) the changes were not inconsistent with the general scheme of the subdivision, and 3) there was no

evidence that the plaintiff had relied on the restrictions.

**4.** Defendants also cite *Boyles v. Hausmann*, 2 Neb.App. 388, 509 N.W.2d 676 (1993), *aff'd as modified*, 246 Neb. 181, 517 N.W.2d 610 (1994), as recognizing that an amendment made during an extension period becomes effective immediately. Defendants' reliance on this case is misplaced, though, because *Boyles* merely held that a majority of the property owners could not amend the restrictions during the initial period. *Id.* 509 N.W.2d at 680.

ties on appeal and, with our reversal of the trial court's decision, we conclude they were the successful parties in the trial court. In the exercise of our discretion, we award plaintiffs attorney's fees for both the trial court proceedings and the appeal in an amount to be determined upon their compliance with the requirements of Rule 21(c), ARCAP.

## CONCLUSION

The summary judgment in favor of defendants is reversed. This case is remanded to the trial court with directions to grant plaintiffs' cross-motion for summary judgment and enter a judgment declaring that the subject amendment of the restrictive covenants cannot become effective until the end of the current extension period, and enjoining defendants from re-subdividing their lots in accordance with the amendment until that time.

EHRLICH, P.J., and VOSS, J., concur.

## SUPPLEMENTAL OPINION

WEISBERG, Judge.

After we filed our original opinion in this case, 186 Ariz.Adv.Rep. 62 (App. March 23, 1995), defendants filed a motion for reconsideration. For the following reasons, we grant the motion for reconsideration and remand this case for the trial court to fashion the appropriate equitable remedy.

Our prior opinion set forth the facts underlying this dispute. Briefly, defendants attempted to amend the restrictive covenants encumbering their property to permit smaller lots. Plaintiffs brought suit seeking 1) a declaratory judgment that the amendment was ineffective and 2) an injunction barring defendants from violating the lot-size restrictions. The trial court granted summary judgment for defendants. We reversed, ruling that the amendment was not effective until the next renewal date, February 3, 2000, and remanded with directions that the trial court enter judgment for plain-

tiffs and enjoin defendants from re-subdividing their lots until the amendment became effective.

Defendants have filed a motion for reconsideration requesting that we delete from our opinion the direction to the trial court to enjoin them from re-subdividing. They argue that this remedy is too burdensome because the site has already been resubdivided, half the lots sold, and thirteen homes constructed. They propose that we merely remand to the trial court with directions that it fashion an equitable remedy.

Plaintiffs respond by pointing out that, before any litigation had occurred, defendants had notice that plaintiffs contested the amendment's validity and that they would challenge it in court. Plaintiffs also note that they filed a Notice of *Lis Pendens* concurrent with their complaint.

We conclude that the remedy in the instant case should be left to the discretion of the trial court. An injunction is an equitable remedy, which allows the court to structure the remedy so as to promote equity between the parties. *See State ex rel. Corbin v. Portland Cement Ass'n,* 142 Ariz. 421, 425, 690 P.2d 140 (App.1984). The discretion in injunctive proceedings lies with the trial court, not the reviewing court. *Gillespie Land & Irrigation Co. v. Gonzalez,* 93 Ariz. 152, 168, 379 P.2d 135, 147 (1963). In the instant case, because summary judgment was entered in favor of defendants, the trial court did not have the opportunity to consider what equitable relief would be appropriate.[1]

Not only is the trial court in a better position than this court to weigh the equities and fashion the appropriate equitable relief, but it can also require the parties to develop a factual record on which to base its decision. Once that record is made, the trial court may then exercise its discretion in fashioning a suitable equitable remedy.

We therefore delete that portion of our prior opinion that remanded with directions to enjoin defendants from re-subdividing their lots. Instead, we remand to the trial

---

1. We deplore the piecemeal approach and the lack of candor that defendants have demonstrated in this litigation. This court was not advised of the status of the development on the subject property until defendants' motion for reconsideration.

court with directions to determine, in light of our original opinion, the appropriate equitable remedy.[2]

EHRLICH, P.J., concurs.

VOSS, Judge, dissenting.

Upon learning that the number of homes would more than double under the improper subdivision plat, Plaintiffs immediately moved to enforce the restrictive covenants that prohibited the re-subdividing.

Plaintiffs' attorneys wrote letters advising Defendants that the restrictive covenants prohibited the re-subdividing. When the letters were ignored, Plaintiffs filed an action seeking declaratory relief and a permanent injunction. A *Lis Pendens* was filed also. In response, Defendants accelerated their development of the subdivision and now argue for the first time that because of their success, they should not be required to comply with this court's ruling. Defendants' brief Motion for Reconsideration—without citation of authority—concludes that "enjoining Defendants from re-subdividing their lots goes too far." Defendants' Motion for Reconsideration at 2. I do not agree.

This "fairness" issue was argued unsuccessfully by Defendants in this appeal. We stated in our Opinion that "[a]s a final matter, we note that defendants argue that it would be unfair to delay the effect of an amendment agreed upon by the requisite number of lot owners." 186 Ariz.Adv.Rep. 62, 64 (App. March 23, 1995). Changing the argument slightly to now say that it costs too much does nothing to change the logic of our decision which concluded that Defendants' argument "ignores the vested rights of other lot owners who are entitled to rely on the provisions of the Declaration of Restrictions." *Id.*

Defendants knew the risks and took their chances. They lost. Neither in their answer to Plaintiffs' Complaint nor in their Motion for Summary Judgment did Defendants request the court to invoke its equitable powers. Because Defendants do not have a valid equitable argument and because equitable relief was never requested below, I believe it is incorrect for the majority to remand the matter to the trial court to fashion equitable relief.

This court agreed with Plaintiffs that the restrictive covenants are clear and enforceable and that Defendants' attempts to amend the restrictions were unsuccessful. Plaintiffs are now entitled to the permanent injunction they sought by filing their Complaint on September 18, 1992. Anything less reduces the original Opinion of this court to an advisory decision; one which will bring comfort to those who choose to ignore restrictive covenants. They will know that even if the court concludes the restrictions are enforceable, if their violation is substantial enough, they can still argue that enforcing restrictive covenants is too costly.

I respectfully dissent.

---

**2.** This supplemental opinion, however, should not be construed as a comment on whether the injunction requested by plaintiffs is appropriate.