835 P.2d 498

**Helen PURCELL, Maricopa County Recorder, Petitioner,**

v.

**SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, the Honorable Robert D. Myers, a judge thereof, Respondent Judge,**

Ruben ORTEGA, Police Chief of the City of Phoenix; Dudley Gibson, Ronald Coker, and Jason Peterson, Police Officers of the City of Phoenix; Alan Lobue, Alan Hammond, Walter Lee Jackson, and Reginald Keifer, Judges of the Phoenix Municipal Court, Real Parties in Interest.

**Robert K. CORBIN, Carl J. Kunasek, Joseph Lane, and Duane Vild, Plaintiffs–Appellants,**

v.

**Helen PURCELL, Maricopa County Recorder; Maricopa County, a political subdivision of the State of Arizona, Defendants–Appellees.**

Nos. 1 CA–SA 91–254, 1 CA–CV 90–464.

Court of Appeals of Arizona, Division 1, Department A.

Aug. 6, 1992.

---

4. Retired Judge Melvyn T. Shelley was authorized to participate in this appeal by order of the Chief Justice of the Arizona Supreme Court pursuant to article 6, section 20 of the Arizona Constitution and A.R.S. § 38–813 (1985).

Richard M. Romley, Maricopa County Atty. by Christina Peterson Sargeant and G. Eugene Neil, Deputy County Attys., Phoenix, for petitioner and defendants-appellees.

Roderick G. McDougall, Phoenix City Atty. by Alan S. Max, Asst. Chief Counsel, and Marvin A. Sondag, Asst. City Atty., Phoenix, for real parties in interest.

Grant Woods, Atty. Gen. by Michael G. Prost, Asst. Atty. Gen., Phoenix, for plaintiffs-appellants.

## OPINION

### CONTRERAS, Judge.

In this consolidated appeal and special action, we consider whether the Maricopa County Recorder must *physically* remove a document determined to be an invalid lien from the county's official records in order to "remove" the lien from the records within the meaning of Arizona Revised Statutes Annotated ("A.R.S.") section 33–420(B) (1990). We conclude that physical removal of the document is not required and that the county recorder need only record a subsequent document declaring the lien to be invalid in order to "remove" it from the county's records within the meaning of the statute.

## FACTUAL AND PROCEDURAL HISTORY

### The Appeal

In 1989, fourteen public officials of Maricopa County and the State of Arizona filed a statutory special action pursuant to section 33–420(B) against the Maricopa County Recorder in the Maricopa County Superior Court.[1] They alleged that certain invalid liens against their property had been filed and recorded in the county recorder's office. They asked that the county recorder, in accordance with the applicable statute, be compelled to remove the liens. The county recorder responded that she would not oppose a court order requiring her to remove the liens, provided that the removal was accomplished by filing a copy of the final judgment in the action or another document declaring the liens to be invalid. She stated, however, that she would oppose an order requiring her to expunge, destroy, or alter any of the county's official records.

The trial court determined that the recorded liens were invalid and directed the public officials to submit a form of judgment granting the relief that they had requested. The form of judgment they submitted would have required the county recorder to physically remove the invalid lien documents from the county's official records, "including but not limited to any docket books, separate record books, or other containers, any index or cross-index thereto, any blotter, electronic or filmed reproduction, or any other form in which said document is maintained or accessed." The county recorder objected to this language. The trial court ordered that it be deleted and entered a judgment that simply directed the county recorder to remove the invalid liens from the county's official records. The public officials submitted a motion for reconsideration asking to have the language in question reinstated. When the motion was denied, four of the public officials appealed.

### The Special Action

Eight City of Phoenix judges and police officers also filed a statutory special action in the Maricopa County Superior Court in 1989 pursuant to section 33–420(B) asking that similar invalid recorded liens against their property be removed from Maricopa County's official records. The county recorder again responded that she would object to a court order that required the physical removal, destruction, or alteration of any recorded document. She asked that she only be required to record a document that reflected the trial court's decision concerning the liens in question.

The trial court found that the recorded liens were invalid and ordered the county recorder to remove them from the county's official records. The judges and police offi-

---

1. In pertinent part, A.R.S. section 33–420(B) provides as follows:

 The owner or beneficial title holder of ... real property may bring an action pursuant to this section in the superior court of the county in which the real property is located for such relief as is required to immediately clear title to the real property as provided for in the rules of procedure for special actions. This special action may be brought against a coun-ty recorder or any other recording official to compel him to remove a lien from the official records of the county based on the ground that the lien is forged, groundless, contains a material misstatement or false claim or is otherwise invalid. The owner or beneficial title holder may bring a separate special action to clear title to the real property or join such action with an action for damages as described in this section....

cers subsequently requested that the county recorder be required to appear and show cause why she should not be held in contempt for failing to comply with the court's order by physically removing the recorded lien documents from the county recording system. At the hearing on the order to show cause, the county recorder took the position that she had removed the liens by recording the judgment declaring them to be invalid. At the conclusion of the hearing, the trial court found the county recorder to be in contempt, stating that section 33–420(B) required that the invalid lien documents be removed, not that a subsequent document declaring their invalidity be recorded.

 The county recorder sought special action relief in this court from the trial court's contempt order. We accepted jurisdiction because contempt orders issued pursuant to A.R.S. section 12–864 (1992) are not appealable. *Pace v. Pace*, 128 Ariz. 455, 626 P.2d 619 (App.1981). We also accepted jurisdiction because the interpretation of section 33–420(B) is a matter of statewide importance that turns upon a question of law rather than upon disputed issues of fact. *Lewis v. Warner*, 166 Ariz. 354, 802 P.2d 1053 (App.1990). On our own motion, we consolidated the special action with the pending appeal.

### DISCUSSION

*Procedural Consideration: Special Action*

 We initially find it necessary to address the procedural argument made by the respondents/real parties in interest that the county recorder's petition for special action relief constitutes an impermissible collateral attack on the judgment that underlies her contempt citation and that this court therefore lacks jurisdiction to consider it. The term "jurisdiction" relates to a court's competency to determine controversies of the general class to which the case then presented for its consideration belongs. *State v. Marquess*, 168 Ariz. 123, 811 P.2d 375 (App.1991). Arizona Revised Statutes section 12–120.21(A)(4) (1992) gives the court of appeals jurisdiction "to hear and determine petitions for special actions brought pursuant to the rules of procedure for special actions, without regard to its appellate jurisdiction." Rule 1(a) of the Arizona Rules of Procedure for Special Actions provides that special action relief is only available to parties who have no "equally plain, speedy, and adequate remedy by appeal." Rule 3(c) provides that a party may file a petition for special action to ask this court to consider "[w]hether a determination was arbitrary and capricious or an abuse of discretion." The county recorder alleged in her petition for special action relief that the trial court acted arbitrarily and capriciously and abused its discretion when it held her in contempt and that she had no plain, speedy, or adequate remedy by appeal. This court therefore has jurisdiction to consider her petition.[2]

*Procedural Consideration: Appeal*

We next consider the county recorder's argument that the appeal does not properly place at issue the meaning of the word "remove" as it is used in section 33–420(B). The county recorder maintains that the language that appellants sought to include in the judgment was superfluous if section 33–420(B) requires her to physically remove the lien documents from the system as they claim that it does. She contends that if appellants thought that she had failed to comply with the judgment, they should have requested that she be required

---

2. The respondents/real parties in interest correctly argue that the county recorder's petition for special action relief constitutes an impermissible collateral attack on the trial court's judgment ordering her to remove the documentation relating to the invalid liens from the recording system. The record demonstrates that the county recorder knew that the trial court was ordering her to physically remove the liens. Because she failed to appeal from that judgment, she is estopped to seek special action relief from the trial court's order holding her in contempt for failing to comply with it. *See Broomfield v. Maricopa County*, 112 Ariz. 565, 544 P.2d 1080 (1975); *State v. Chavez*, 123 Ariz. 538, 601 P.2d 301 (App.1979). For this reason, we are procedurally required to deny the special action relief that she requests. However, for the reasons stated, we do have jurisdiction to consider the petition.

to appear and show cause why she should not be held in contempt for her noncompliance. We disagree.

Appellants argued throughout the proceedings in the trial court that section 33–420(B) required the county recorder to physically remove the invalid lien documents from the county recording system. As we have noted, they prepared a form of judgment that explicitly required the county recorder to eliminate any trace of the liens from the county's official records. When the trial court deleted this requirement in response to the county recorder's objection and simply ordered that the liens be removed from the county's records, appellants filed a motion for reconsideration. In the motion they again argued that they were entitled to have the lien documents physically removed and asked that the language requiring physical removal be reinstated. When the trial court denied their motion for reconsideration, they appealed. On appeal, they argue that the trial court erred in deleting the requested language because section 33–420(B) requires that the lien documents be physically removed. Their appeal thus places the issue of the meaning of the word "remove" as it is used in section 33–420(B) squarely before this court. Having disposed of the procedural considerations, we proceed to the merits.

### The Merits

■ The appellants and the respondents/real parties in interest argue that the plain language of section 33–420(B) requires the county recorder "to remove a lien" that has been determined to be invalid "from the official records of the county." They maintain that if the legislature had intended that an invalid lien be nullified by some method other than physical removal from the county's records, such as the recording of a subsequent document declaring the lien to be invalid, it would have expressly set forth that method in the statute.

The county recorder's response is based in part upon the nature of Maricopa County's recording system. The record demonstrates that original documents presented to the county recorder's office for recording are given recording numbers and microfilmed in sequential numerical order. The original documents are then returned to the party who presented them for recording. The microfilmed copies are retained in the county recorder's office where they are open to public inspection. The county recorder's office also sends copies of each day's microfilm to at least forty title companies and other private entities. From these copies, the title companies maintain systems known as "title plants", which are used in conducting title searches. Testimony at the hearing on the order to show cause indicated that it is much easier to conduct a title search in a title plant than it is in the county's official records and that most title searches are performed by title companies.

The county recorder maintains that the only way to modify a recorded document is to record a subsequent document that makes reference to the first recorded document and explains the nature of the modification in accordance with A.R.S. section 11–480(B) (1990).[3] She states that her office has always interpreted section 33–420(B) as requiring that this procedure be followed to remove an invalid lien from the system. She points out that the system is predicated upon a sequential numbering system and that documents cannot be physically removed from it easily. She says that to her knowledge, no document has ever been physically removed from the described system. She explains that for decades, new documents have simply been added to the previous recordings, creating "chains of title" that can be readily traced in title searches.

The county recorder warns that the physical removal of documents from the system will result in gaps in the chains of title and

---

**3.** Arizona Revised Statutes section 11–480(B) provides as follows:

Any instrument presented to a county recorder for recordation which modifies in any

way the provisions of a previously recorded document must state the date of recordation and the docket and page of the document being modified.

will cause anomalies in the sequential numbering scheme. She also observes that even if copies of documents are removed from the county's recording system, they will nonetheless remain in the title companies' title plants. She argues that the resulting discrepancy will jeopardize the integrity of the entire system. Moreover, she contends that physically removing the documents will not have the effect that the appellants and the respondents/real parties in interest are seeking. She maintains that instead of clearing the titles to their property, removing the lien documents will simply raise questions as to what information was stated in the missing documents.

Testimony presented at the order to show cause hearing supports the county recorder's arguments and indicates that the physical removal of documents from the county's recording system would be a complex, confusing, expensive and time-consuming process. Roger Johnson, an employee of the county recorder's office, described the steps that would be necessary to remove a document from the system. He testified that the document would have to be excised from the microfilm. The film would then be spliced, and the strip would be refilmed. Johnson said that this process could damage the documents before and after the document to be removed, that focusing problems could arise in trying to refilm the spliced strip, and that the entire procedure could damage the film's archival quality. He did state that as an alternative method of removal, a hole could be punched in the portion of the film containing the document.

Johnson also testified that the county was in the process of converting to an optical disc image management system. He explained that this system involved burning a permanent image of a document into a disc. He stated that the image could not be removed from the disc, but that index pointers on the disc could be eliminated so that the public would be unable to locate the document. He noted that although the county is engaged in this conversion process, it will continue to microfilm documents for backup purposes and it will not convert the documents that have

previously been microfilmed to the disc system.

Johnson further explained that if a document were to be removed from the system, it would also have to be removed from the county's index of recorded documents. This would involve writing a program to delete the document from the magnetic tape containing the index, running a new tape, and generating new microfiche from it. Johnson estimated that it would cost between two and three hundred dollars to remove each document from the system and the index. He stated that he was not aware of any statutes that authorized the county to charge a fee to cover the cost of expungement.

Johnson also testified that the county recorder's office might not be able to keep its records up to date if it was required to spend time physically removing documents from its system. He stated that it was important for the records to be as current as possible in order to protect the public's rights and to enable title companies to issue valid title insurance policies. He expressed the opinion that physically removing invalid lien documents from the system would cause greater difficulties and would raise more questions than would recording subsequent documents declaring such liens to be invalid. He predicted that people who encountered blank spaces corresponding to certain recording numbers would attempt to find out what was contained in the missing documents.

Scott Peterson, an underwriting counsel for Lawyers Title of Arizona, also testified at the order to show cause hearing. He said that because his company uses its title plant to conduct title searches, it would know that a document had been physically removed from the county's official records only if it was specifically notified that this had occurred. He stated that this notification would be meaningless to the company if a subsequently recorded document had already declared the lien document to be invalid. He explained that upon receipt of the invalidating document, the company would have ceased to take the lien document into account in issuing title insur-

172

ance. He further stated that the company would not remove a document from its title plant in response to the information that the county had removed the document from its records.

Peterson also described how he would react if he was using the county's records to do a title search and he found that a document corresponding to a particular recording number was missing. He stated that he would go back to the title company's records to find out what the document was and to evaluate the rights that the parties might have thought that it represented. He said that his company would be concerned by changes in the county's records because it issued title insurance policies based on its assessment of the risks that its copy of the records revealed on the day that the policy was issued, and changing the records could change the risks involved.

We agree with the county recorder's position that the legislature did not intend section 33–420(B) to require the *physical* removal of invalid lien documents from the county's official records. As a practical matter, such a requirement would wreak havoc upon a system that has been in place for decades while doing little to effectuate the statute's goal of immediately removing the liens from the real property involved. Because most title searches are conducted in the title companies' title plants rather than in the county's official records, record-

ing a subsequent document declaring the lien documents to be invalid is the only effective way of immediately removing the liens from the real property in question. We reject the premise that the legislature intended to require the county recorder's office to institute the expensive, time-consuming, and essentially pointless procedure of physically removing invalid lien documents from its official records.

We note that the county recorder also argues that if section 33–420(B) is interpreted to require the physical removal of invalid lien documents from the county's recording system, it will conflict with several other statutes that prohibit such removal. We need not discuss these statutes in detail given our conclusion that the legislature did not intend section 33–420(B) to require that the lien documents be physically removed.

For the reasons stated, we affirm the judgment entered in the appeal and accept jurisdiction but deny relief in the special action.

EHRLICH, P.J., and VOSS, J., concur.