261 P.3d 436

Daryle G. RAIMEY and Carolyn E. Raimey, husband and wife; Kathryn Pugnier and Vincent Pugnier, wife and husband; Joseph Kuka and Arylynne Kuka, husband and wife; Edward Bernal and Bertha J. Bernal, husband and wife; Philip Morgan and Glynda M. Morgan, husband and wife; Dorothy Norris and John Doe Norris, wife and husband; Deannalee C. Plant and John Doe Plant, wife and husband; Frank S. Ponio and Ellen J. Ponio, husband and wife; Harold G. Robinson and Anita R. Robinson, husband and wife; Jose Secura and Rosalina Secura, husband and wife; James Shields and Eileen Shields, husband and wife; Arthur H. Sprandel and Janice E. Sprandel, husband and wife; Robert D. Wimsett and Carolyn Wimsett, husband and wife; Frank W. Wolgan and Betty J. Wolgan, husband and wife; James H. Anhorn and Jane Doe Anhorn, husband and wife; Harold M. Britton and Janet E. Britton, husband and wife; Howard R. McKillip and Debra McKillip, husband and wife; Nelson J. Dean and R. Shirley Dean, husband and wife; Evangelina Demarbiex Beneficiary of the Evangelina Demarbiex Trust; Harold L. Geivett and Ruby Geivett, husband and wife; Mabelle Lerstad and John Doe Lerstad, wife and husband; Roy Don Fields and Susan Fields, husband and wife; Edward L. Young and Joanne Young, husband and wife; W.T. Tiller and Norma J. Tiller, husband and wife; Roger Breyfogle and Maria Breyfogle, husband and wife, Petitioners,

v.

The Honorable John DITSWORTH, Judge of the Superior Court of the State of Arizona, in and for the County of Maricopa, Respondent Judge,

Dreamland Villa Community Club, Inc., an Arizona non-profit corporation, Real Party in Interest.

No. 1 CA–SA 10–0255.

Court of Appeals of Arizona, Division 1, Department B.

July 21, 2011.

Cheifetz Iannitelli Marcolini, P.C. By Steven W. Cheifetz and Stuart F. Gross, Phoenix, Attorneys for Petitioners.

Maxwell and Morgan P.C. By Charles E. Maxwell and Brian W. Morgan, Mesa, Attorneys for Real Party in Interest.

## OPINION

BROWN, Judge.

¶ 1 In this special action, Daryle G. Raimey, et al. ("Petitioners"), challenge the trial court's judgment entered pursuant to this court's opinion and resulting mandate in *Dreamland Villa Cmty. Club, Inc. v. Raimey*, 224 Ariz. 42, 226 P.3d 411 (App.2010). We may accept jurisdiction when the case presents a pure question of law for which there is no "equally plain, speedy, and adequate remedy by appeal[.]" Ariz. R.P. Spec. Act. 1(a); *see also State ex rel. Pennartz v. Olcavage*, 200 Ariz. 582, 585, ¶ 8, 30 P.3d 649, 652 (App.2001). "[T]he appropriate method of seeking review of a trial court's judgment on remand entered pursuant to specific directions of an appellate court is through special action" because a trial court's entry of judgment "based on [an appellate court's] specific mandate and opinion is not appealable." *Scates v. Ariz. Corp. Comm'n*, 124 Ariz. 73, 75–76, 601 P.2d 1357, 1359–60 (App. 1979). In the exercise of our discretion, we accept jurisdiction of this special action and, for the following reasons, grant relief.

## BACKGROUND [1]

¶ 2 In *Raimey*, Dreamland Villa Community Club ("DVCC") appealed the trial court's denial of its request for attorneys' fees after it prevailed in litigation against the Petitioners. *Id.* at 45–46, ¶¶ 12–15, 226 P.3d at 414–15. Petitioners, who own lots located in sections 7, 14, 15, 16, 17, and 18 of Dreamland Villa (the "Six Sections"), cross-appealed, asserting that certain restrictive covenants of DVCC, known as the Second Amended Declarations, were invalid because DVCC "could not create new affirmative obligations where the previous provisions did not alert the homeowners to the possibility that they would be subject to assessments." *Id.* at 50, ¶ 32, 226 P.3d at 419. This court agreed with Petitioners and held that the "Second Amended Declarations [were] invalid and unenforceable." *Id.* at 51, ¶ 37, 226 P.3d at 420. We also awarded Petitioners their attorneys' fees incurred on appeal but did not address recovery of fees incurred in the trial court. *Id.* Our subsequent mandate ordered the trial court to "comply with the decision."

¶ 3 On remand, the parties disputed the ramifications and scope of our decision in *Raimey*. DVCC argued that the decision was binding only as to homeowners who participated in the Raimey cross-appeal, while Petitioners contended that the Second Amended Declarations were invalid as to all homeowners within the Six Sections. Petitioners also requested restitution for judgments they had previously paid to DVCC as well as attorneys' fees they had incurred in the trial court throughout the litigation.

---

1. The extensive factual and procedural history of this case is explained in detail in *Raimey*, 224 Ariz. at 43–46, ¶¶ 2–14, 226 P.3d at 412–15.

¶ 4 The trial court agreed with DVCC's position and issued a judgment on mandate, ordering that "the Second Amended Declaration of Restrictions recorded in Sections 7, 14, 15, 16 and 17 of Dreamland Villa are invalidated, and no longer of any force and effect as to the Defendants set forth above for their respective Sections, with the exception of Defendants [who did not participate in the cross-appeal]." Thus, the court restricted the judgment to the homeowners who participated in the cross-appeal. As to Petitioners' requests for restitution and attorneys' fees, the court declined to address these issues in the judgment on mandate. Petitioners then filed this petition for special action.

## DISCUSSION

### I. Scope of the *Raimey* Opinion

¶ 5 Petitioners assert that the trial court, in its judgment on mandate, ignored the "clear holding" of this court's decision in *Raimey* when it failed to declare the Second Amended Declarations invalid as to all residents in the Six Sections. Petitioners argue that *Raimey* "clearly invalidate[d] the Second Amended Declarations as to everyone," not just those homeowners participating in the appeal.

¶ 6 A trial court does not have "authority to transgress upon the 'obvious intent' of this court" by contravening on remand a decision and mandate previously issued. *Tucson Gas & Elec. Co. v. Superior Court*, 9 Ariz.App. 210, 212, 450 P.2d 722, 724 (1969). Thus, an appellate mandate, along with the decision it seeks to implement, is binding on the trial court and enforceable according to its "true intent and meaning." *Vargas v. Superior Court*, 60 Ariz. 395, 397, 138 P.2d 287, 288 (1943). Because the mandate issued after *Raimey* required the trial court to comply with the *Raimey* opinion, we look to that opinion to determine whether the trial court exceeded its jurisdiction. *See Harbel*

*Oil Co. v. Superior Court of Maricopa Cnty.*, 86 Ariz. 303, 306, 345 P.2d 427, 429 (1959) (explaining that the determination of whether the trial court had authority to consider certain issues on remand would require analysis of the holding and terms of the mandate previously issued).

¶ 7 In *Raimey*, we held that the Second Amended Declarations for the Six Sections were invalid, reasoning as follows:

For decades after the first development of Dreamland Villa, DVCC was a voluntary club with voluntary membership. Homeowners had no right appurtenant to their lot ownership to membership in the club and no such right in the recreational facilities. There were no common areas. There were no assessments paid to the club, only voluntary dues paid by those who chose to use the facilities. Many homeowners chose not to become members or to use the facilities. The authority to amend the original Declarations did not allow 51% of the lot owners to force the other 49% into club membership the latter had chosen against, nor to assess and lien the properties of such homeowners for an association they did not seek. It is not reasonable to use the amendment provision to direct that one group of lot owners may, in effect, take the property of another group in order to fund activities that do not universally benefit each homeowner's property or areas owned in common by all.

224 Ariz. at 51, ¶ 36, 226 P.3d at 420. We reasoned further that "to allow the generic amendment provision present here to burden the homeowners' individual lots would unreasonably alter the nature of the covenants, to which implicit agreement was historically given." *Id.* at ¶ 38. We therefore concluded that "the Second Amended Declarations [are] invalid and unenforceable." *Id.* at ¶ 37. Although we noted that the declarations were unenforceable against "the homeowners," [2] we did not specifically address whether the

---

2. We stated, "For purposes of this opinion ... the appellees (including all homeowners from the proceedings below) and cross-appellants (not including those homeowners not participating in the cross-appeal) will be referred to collectively as 'the homeowners.'" *Id.* at 44 n. 4, ¶ 7, 226 P.3d at 413 n. 4. Therefore, at a minimum, *Raimey* applied to all homeowners who were parties in the litigation and is not restricted solely to the cross-appellants.

declarations were unenforceable against other residents of the Six Sections.

¶ 8 "Deed restrictions constitute 'a contract between the subdivision's property owners as a whole and the individual lot owners.'" *Wilson v. Playa de Serrano*, 211 Ariz. 511, 513, ¶ 7, 123 P.3d 1148, 1150 (App. 2005) (citation omitted). The lot of one homeowner cannot be considered separate and apart from its relation to all lots within a subdivision. *See Camelback Del Este Homeowners Ass'n v. Warner*, 156 Ariz. 21, 27, 749 P.2d 930, 936 (App.1987) (concluding that "unless otherwise provided for in the restrictions themselves, any amendment to restrictive covenants must apply to every lot"); *La Esperanza Townhome Ass'n, Inc. v. Title Sec. Agency of Ariz.*, 142 Ariz. 235, 239, 689 P.2d 178, 182 (App.1984) (finding that "restrictions and conditions can only be changed uniformly"); *Riley v. Boyle*, 6 Ariz.App. 523, 526, 434 P.2d 525, 528 (1967) (allowing a majority of homeowners to impose restrictions on some, but not all lots, "could easily result in a patchwork quilt of different restrictions ... and completely upset the orderly plan of the subdivision"). Therefore, to ensure uniformity in the application of deed restrictions, *Raimey*'s holding necessarily applies to all homeowners within the Six Sections.

¶ 9 *Scholten v. Blackhawk Partners*, 184 Ariz. 326, 909 P.2d 393 (App.1995), supports our conclusion. In *Scholten*, certain restrictive covenants included a duration clause, which stated that the covenants were to be extended for successive periods of ten years after February 1970, unless the residents agreed by majority vote to amend the covenants. *Id.* at 327, 909 P.2d at 394. In 1992, the defendant lot owners attempted to amend the covenants, proposing a reduction of the minimum lot size from one acre to 18,000 square feet. *Id.* The plaintiffs, a married couple, filed suit to obtain a declaration that the amendment was not yet in force because

the defendants did not amend the covenants prior to the start of the new ten-year extension period beginning in 1990. *Id.* at 328, 909 P.2d at 395. In ruling on cross-motions for summary judgment, the trial court dismissed the plaintiffs' suit, finding that the amendment was effective when filed. *Id.*

¶ 10 On appeal, we determined that an amendment approved "during the running of an extension period [was] effective only at the start of the next successive period." *Id.* at 329, 909 P.2d at 396. We therefore concluded that the trial court erred by granting summary judgment in favor of the defendants. *Id.* at 330, 909 P.2d at 397. Accordingly, we "remanded to the trial court with directions to grant plaintiffs' cross-motion for summary judgment and enter a judgment declaring that the subject amendment of the restrictive covenants cannot become effective until the end of the current extension period[.]" *Id.* at 331, 909 P.2d at 398. This holding encompassed all homeowners within the housing community, including, but not limited, to the plaintiffs. In other words, no reasonable argument could be made that the covenants were unenforceable as to the plaintiffs but enforceable against all other lot owners. Thus, *Scholten* supports our holding that the Second Amended Declarations are invalid as to all homeowners in the Six Sections.

¶ 11 Here the trial court found on remand that "the Second Amended Declaration of Restrictions recorded in Sections 7, 14, 15, 16 and 17 of Dreamland Villa are invalidated, and no longer of any force and effect *as to the Defendants set forth above for their respective Sections, with the exception of Defendants [who did not participate in the cross-appeal.]* "[3] (Emphasis added.) Because we unequivocally determined in Raimey that the declarations were invalid and unenforceable, it follows that DVCC cannot

3. We note that the trial court erred when it failed *to identify section 18 in its judgment.* Although we found in *Raimey* that the original declaration for section 18 contained language not present in the declarations of the other sections, we ultimately decided that "homeowners in section 18 were in the same position with reference to DVCC ... as were all the other homeowners

here." 224 Ariz. at 48, ¶ 23, 226 P.3d at 417. Therefore, we concluded that although the "homeowners within section 18 did not join in the motion for summary judgment," we could "assess the viability of the Second Amended Declarations by the same standards as to all the homeowners[.]" *Id.* at ¶ 24.

enforce these restrictions against any homeowner living within the Six Sections. By limiting application of our holding in *Raimey* to only the cross-appellants, we would be inviting DVCC to enforce the invalid declarations against other homeowners, in contravention of the basic principle that all homeowners within a particular subdivision be subject to the same restrictive covenants.

¶ 12 DVCC, however, argues that *Raimey* applies only to those homeowners who filed the cross-appeal. First, relying on *McDonnell v. S. Pac. Co.*, 79 Ariz. 10, 12, 281 P.2d 792, 793 (1955), DVCC contends that "[i]t is a simple principle of law that persons not parties to a lawsuit cannot benefit from any rulings in the lawsuit." However, *McDonnell* merely states that a "court has no jurisdiction to render a *judgment* in favor of one not a party to the suit." *Id.* (emphasis added). In *Raimey,* we did not affirmatively rule that homeowners other than cross-appellants were entitled to a favorable judgment. Rather, we held that DVCC, as a party to the suit, was precluded from enforcing the Second Amended Declarations because the declarations are invalid. As such, DVCC would be collaterally estopped from enforcing the declarations against the other homeowners. *See Campbell v. SZL Props., Ltd.,* 204 Ariz. 221, 223, ¶¶ 9–10, 62 P.3d 966, 968 (App. 2003). DVCC is therefore precluded from enforcing the declarations, and fails to provide any valid reason why the judgment should not reflect that the Second Amended Declarations are invalid as to all homeowners within the Six Sections.[4]

¶ 13 For the same reasons, we reject DVCC's reliance on a Restatement provision that states, "A person who is not a party to an action is not bound by *or entitled to the benefits* of the rules of res judicata[.]" Restatement (Second) of Judgments § 34(3) (1982) (emphasis added). A judgment declaring the Second Amended Declarations invalid does not bestow a benefit on the other homeowners; it deprives DVCC, as a party to the prior suit from enforcing declarations that we have declared invalid.[5]

¶ 14 The introductory note to the Restatement of Judgments is in accord with our conclusion that a judgment may affect the rights of nonparties. It states,

A person may be legally affected by a judgment, broadly speaking, by reason either of being a party or equivalent participant in the litigation, or from having a legal relationship that is derivative from one who was a party, *or in being so situated that his own rights or obligations are conditioned in one way or another by a judgment involving another person.*

*Id.* ch. 4, intro. note (emphasis added). Here, those homeowners within the affected sections who were not parties to this litigation have rights that are conditioned on the determination of whether the Second Amended Declarations were invalid. Like the nonparty lot owners in *Scholten,* the nonparty homeowners in *Raimey* were relieved of the obligations of the Second Amended Declarations when this court determined they were invalid.

---

4. The scenario presented here—where a court declares that restrictive covenants in a housing community are invalid—is analogous to a court's decision invalidating a statute as unconstitutional on its face. The ruling invalidating the statute would not only preclude the government from enforcing the statute against the individual that challenged the statute; it would preclude the government from enforcing the statute. Likewise, DVCC cannot enforce the invalid restrictive covenants at issue here against any affected homeowner.

5. DVCC relies on other authorities to support its contention that res judicata would not allow homeowners who did not participate in the cross-appeal to benefit from our decision in Raimey. See Restatement (Second) of Judg-

ments § 76 cmt. a ("Generally speaking, a judgment is of no legal concern to a person who is neither a party to it nor otherwise bound by it under the rules of res judicata."). DVCC also argues that persons may not "stand on the sidelines to avoid an adverse outcome of a lawsuit and then seek to benefit from a favorable ruling." *Id.* at § 76 cmt. b (interests may be put in jeopardy when others are "emboldened in acting because they suppose the judgment has determinative significance."). However, as previously stated, we did not determine that the other homeowners were entitled to any benefit or affirmative relief; we merely concluded that DVCC could not enforce the Second Amended Declarations against homeowners in the Six Sections of the subdivision.

¶ 15 DVCC asserts nonetheless that our holding in *Raimey* is not applicable to homeowners other than cross-appellants because we did not find that the declarations were "void," but rather "voidable." DVCC asserts that "a 'void' document never takes effect" and is "nugatory and ineffectual so that *nothing can cure it*,"[6] whereas a " 'voidable' document is valid and enforceable until such time, if ever that it is timely and successfully challenged in a court of law." DVCC contends that this court found the declarations were invalid, or merely "voidable." Thus, it argues that the declarations can only be rendered void as against a nonparty "by a timely legal challenge." However, we find that this court's use of the word "invalid" instead of "void" is a distinction without a difference and we decline to adopt DVCC's suggested interpretation. *Raimey*'s holding that the Second Amended Declarations are invalid and unenforceable has only one reasonable meaning—that the declarations cannot be enforced. *Id.* at 49, ¶ 30, 226 P.3d at 418.

¶ 16 By extension, DVCC also argues that because the Second Amended Declarations are merely voidable, it has the right to assert a number of defenses against others who would argue the Second Amended Declarations are not effective as to them. For example, DVCC asserts that the statute of limitation has expired, thereby providing DVCC with a defense against other homeowner claims of invalidity.[7] However, DVCC cites no authority for the proposition that a statute of limitations restricts a lot owner's ability to seek a determination that a particular restrictive covenant is unenforceable. Moreover, DVCC acknowledges that if, as we have concluded, the Second Amended Declarations are invalid and therefore void, they cannot be confirmed or ratified by the run-ning of the statute of limitations. *See Princess Plaza Partners v. State*, 187 Ariz. 214, 222 n. 5, 928 P.2d 638, 646 n. 5 (App. 1995) ("A 'voidable' agreement would be one subject to rescission or ratification whereas a 'void' agreement would be *incapable* of ratification or disaffirmance.") (emphasis added).

¶ 17 At oral argument before this court, DVCC asserted that *Armstrong v. Ledges Homeowners Ass'n, Inc.*, 360 N.C. 547, 633 S.E.2d 78 (2006), which we cited in *Raimey*, supports its argument that *Raimey* does not apply to all homeowners. *Armstrong* noted as follows:

> [A court] may determine that an amendment is unreasonable, and therefore, invalid and unenforceable against *existing* owners who purchased their property before the amendment was passed; however, the same court may also find that the amendment is binding as to *subsequent* purchasers who buy their property with notice of a recorded amended declaration.

*Id.* at 88. Ultimately, however, the *Armstrong* court concluded that an amendment requiring assessments was "invalid and unenforceable," reasoning that it could "not permit the Association to use the [d]eclaration's amendment provision as a vehicle for imposing a new and different set of covenants, thereby substituting a new obligation for the original bargain of the covenanting parties." *Id.* at 89.

¶ 18 We decline to adopt a principle that would allow the Second Amended Declarations to be enforced against homeowners who purchased with notice. The issue of enforceability against future lot owners was not an issue in *Armstrong* and the court's statement—that a court "may" find the otherwise invalid amendment binding—is dicta. Even if it were not dicta, nothing in *Raimey* remotely suggests that our holding in that case

---

**6.** DVCC relies on *Easley v. Pettibone Mich. Corp.*, 990 F.2d 905, 909 (6th Cir.1993) (citation omitted).

**7.** In its response to the petition for special action and at oral argument before this court, counsel for DVCC suggested that the panel that decided *Raimey* was consciously aware of the fact that the "six[-]year statute of limitation[s] of A.R.S. § 12–548 . . . expired by no later than February 22, 2010, several weeks before issuance of

*[Raimey ]*." Counsel further asserted that this court deliberately "withheld issuance of [*Raimey* ] until after the six years expired." Although none of the judges on this panel participated in the *Raimey* decision, nothing in the record supports such unfounded speculation and we do not believe for an instant that the timing of the issuance of the *Raimey* opinion was dictated by any actual or perceived statute of limitations issue.

applies only to existing homeowners. Furthermore, DVCC's suggestion would contravene longstanding precedent that requires deed restrictions to be enforced uniformly; an invalid restriction does not become valid simply based on the timing of a lot purchase. *See Warner,* 156 Ariz. at 27, 749 P.2d at 936.

¶ 19 In sum, we conclude that the Second Amended Declarations are invalid as to all homeowners in the Six Sections, regardless of the purchase date. Therefore, the trial court erred when it found that the Second Amended Declarations were invalidated only as to homeowners who participated in the prior appeal. *See Vargas,* 60 Ariz. at 397, 138 P.2d at 288 (the trial court's jurisdiction on remand is limited by the terms of the mandate, which must be strictly followed). Accordingly, we remand to the trial court and direct that the judgment provide that the Second Amended Declarations are invalid and unenforceable as to all homeowners in sections 7, 14, 15, 16, 17, and 18. *See Armstrong,* 633 S.E.2d at 88–89 (concluding that the disputed amendment was "invalid and unenforceable"); *Gillebaard v. Bayview Acres Ass'n, Inc.,* 263 S.W.3d 342, 353 (Tex. App.2007) (directing the trial court on remand to "declare that the Amended and Restated Restrictions [in a residential subdivision] ... are invalid and unenforceable").

## II. Notice of Invalidity

■■■ ¶ 20 In the trial court, Petitioners unsuccessfully requested authorization to file a notice of invalidity with the recorded deed restrictions to ensure that the public is alerted to the invalidity of the Second Amended Declarations. Generally, recording a subsequent document is the only effective way of removing a prior invalid recorded document. *See Purcell v. Superior Court,* 172 Ariz. 166, 172, 835 P.2d 498, 504 (App.1992). Physical removal of invalid recorded documents is expensive, time-consuming, and "essentially pointless." *Id.* Obviously, Petitioners have the legal right to record the judgment, which in theory should be sufficient to advise the public of the status of the Second Amended Declarations. *See* Ariz.Rev.Stat. ("A.R.S.") § 33–414 (2007) ("Every judgment of a court by which title to real property is affected

shall be recorded in the office of the county recorder of the county in which the real property or part thereof is located[.]"). As a practical matter, however, the judgment on mandate in this case will include multiple pages addressing matters that do not affect real property, such as restitution and attorneys' fees. Thus, to eliminate any confusion or ambiguity as to the status of the Second Amended Declarations, Petitioners should be permitted to record a simple notice informing all homeowners in the Six Sections that the Second Amended Declarations are "invalid and unenforceable." On remand, the trial court shall authorize such a notice to be recorded, ensuring consistency with the judgment on mandate.

## III. Restitution

■■ ¶ 21 Petitioners also argue that the trial court erred when it refused to award Petitioners restitution for all amounts they paid to DVCC to satisfy the vacated judgments. Funds paid by a judgment debtor to a judgment creditor must be refunded to the debtor if the judgment has been set aside and "justice requires restitution." *See United States v. Morgan,* 307 U.S. 183, 197, 59 S.Ct. 795, 83 L.Ed. 1211 (1939) (citation omitted); Restatement (First) of Restitution § 74 (1937) ("A person who has conferred a benefit upon another in compliance with a judgment, or whose property has been taken thereunder, is entitled to restitution if the judgment is reversed or set aside, unless restitution would be inequitable or the parties contract that payment is to be final[.]").

¶ 22 Here, some of the Petitioners paid the judgments that had been entered against them for unpaid assessments and late fees. Because of our decision in *Raimey,* the judgments were set aside and therefore those Petitioners are entitled to restitution, including both the amounts paid and interest from the dates of such payments "at the rate established by the law of the state in which such sums were paid." *See Baltimore & O.R. Co. v. United States,* 279 U.S. 781, 786, 49 S.Ct. 492, 73 L.Ed. 954 (1929).

■■ ¶ 23 Without citation to authority, DVCC contends that restitution is improper because in *Raimey,* we did not address resti-

tution and Petitioners did not ask for restitution in that part of this litigation. Although Petitioners may not have explicitly requested restitution as a remedy on appeal, it was implicit in their argument on cross-appeal that the trial court erred in granting DVCC summary judgment and in entering judgment against Petitioners for unpaid assessments, including late charges and interest. Moreover, entitlement to restitution is not triggered until a judgment is set aside, which did not occur here until the mandate was issued. *See In re 1969 Chevrolet, 2–door*, 134 Ariz. 357, 360–61, 656 P.2d 646, 649–50 (App. 1982) (quoting Restatement (First) of Restitution § 74). Thus, Petitioners did not waive their right to claim restitution.

¶ 24 On remand, the trial court shall enter a restitution order in favor of those Petitioners who satisfied in whole or in part the vacated judgments. In light of DVCC's arguments that certain Petitioners used the facilities provided by DVCC, the court may equitably reduce specific restitution awards in the exercise of its discretion if DVCC can show such use.

## IV. Attorneys' Fees—Trial Court

¶ 25 Finally, Petitioners argue that the trial court erred on remand when it refused to award Petitioners the attorneys' fees they incurred prior to and subsequent to the appeal. DVCC counters that Petitioners waived any right to pre-appellate fees because they did not specifically mention those fees in their briefs on appeal in *Raimey. See* ARCAP 21(c) ("When attorneys' fees are claimed pursuant to statute, decisional law or contract, a request for allowance of attorneys' fees in connection with the … prosecution or defense of the case in the superior court shall be made in the briefs on appeal[.]"). As a result of Petitioners' request, they were awarded fees incurred on appeal but there was no discussion in *Raimey* whether Petitioners were entitled to fees

previously incurred in the trial court. In our view, however, Petitioners' broad request was sufficient to preserve the issue:

> As this is a matter arising out of contract, the Cross–Appellants request an award of attorneys' fees and costs pursuant to the Declarations, and A.R.S. §§ 12–341 and –341.01 pending an application in compliance with Rule 21 of the Arizona Rules of Civil Appellate Procedure.

We do not favor the approach employed here by Petitioners, as the better course would have been to identify the scope of the fee award with specificity. *See Wagenseller v. Scottsdale Mem'l Hosp.*, 147 Ariz. 370, 391, 710 P.2d 1025, 1046 (1985) (recognizing that "notice of intent to seek fees should be given before 'each stage' of a lawsuit, furthering the public policy of encouraging settlement"). But we reject DVCC's suggestion that Petitioners sought only their fees on appeal, as their request contains no such limitation. Instead, Petitioners sought a general award of fees pursuant to the restrictive covenants and statutory authority, which was sufficient to preserve their right to seek attorneys' fees incurred in the superior court proceedings. *Cf. Robert E. Mann Constr. Co. v. Liebert Corp.*, 204 Ariz. 129, 133, ¶ 10, 60 P.3d 708, 712 (App.2003) (finding that a party's failure to request attorneys' fees pursuant to AR-CAP 21(c) precludes that party from seeking their pre-appellate fees after remand).[8]

¶ 26 DVCC also asserts that the trial court's authority to award fees is limited to "recovery of any attorneys' fees and costs awarded pursuant to the appellate mandate, and for recovering any appellate costs against the bond for costs on appeal." *See* State Bar of Arizona, Arizona Appellate Handbook § 3.13.7.1, at 3–175. Because *Raimey* did not address attorneys' fees outside the appellate proceedings, DVCC argues that the trial court lacked jurisdiction to award additional pre- and post-appellate attorneys' fees. Under these circumstances,

8. Similarly, DVCC asserts that Petitioners are precluded from obtaining post-appellate fees because they did not request such attorneys' fees "in the briefs on appeal." Arizona Appellate Handbook § 3.14.2.1, at 3–182 (5th ed. 2010) (quoting ARCAP 21(c)). We are not bound by the Arizona Appellate Handbook, but in any

event, that provision clarifies that the purported rule it articulates only applies to "fees for pre-appellate work." *Id.* Moreover, Petitioners could not have requested post-appellate fees at the time we issued the *Raimey* decision as the fees had not yet been incurred.

however, the trial court's power to award attorneys' fees is not restricted solely to those fees explicitly determined by our decision in *Raimey*. Although our court did not expressly direct the trial court to grant pre- or post-appellate fees, an award of such fees is not inconsistent with the mandate. *See Kadish v. Ariz. State Land Dept.*, 177 Ariz. 322, 328, 868 P.2d 335, 341 (App.1993) (where this court failed to address attorneys' fees, the trial court on remand was free to entertain an attorneys' fees application); *Harbel*, 86 Ariz. at 306, 307–08, 345 P.2d at 429, 430 (where the appellate court "neither expressly nor impliedly" addressed certain defenses, the trial court could address the defenses on remand because they were not inconsistent with mandate's holding). We therefore remand for reconsideration of whether Petitioners are entitled to pre- and post-appellate attorneys' fees.

### V. Attorneys' Fees—Special Action

¶ 27 Both Petitioners and DVCC request recovery of the attorneys' fees incurred in this special action pursuant to A.R.S. § 12–341.01 (2003). DVCC also requests that we award fees as a sanction against Petitioners pursuant to A.R.S. § 12–349 (2003), A.R.S. § 12–350 (2003), and Arizona Rule of Civil Procedure 11. As authorized by Arizona Rule of Special Actions Procedure 4(g), in the exercise of our discretion, we award Petitioners their reasonable attorneys' fees and costs incurred in this special action upon their compliance with Arizona Rule of Civil Appellate Procedure 21(c). As to DVCC's request for sanctions, the request is entirely without merit and is therefore denied.

### CONCLUSION

¶ 28 For the foregoing reasons, we vacate the trial court's judgment on mandate and remand for entry of a new judgment that provides that the Second Amended Declarations are "invalid and unenforceable" as to all homeowners in sections 7, 14, 15, 16, 17, and 18. The judgment shall provide further that Petitioners may record a separate notice of invalidity of the Second Amended Declarations which accurately identifies all the lots located within the aforementioned sections. In addition, the court shall grant Petitioners reasonable restitution, which may be reduced due to equitable considerations applying to specific Petitioners. Finally, the court shall reconsider Petitioners' request for attorneys' fees incurred in the trial court.

CONCURRING: DIANE M. JOHNSEN, Presiding Judge and JOHN C. GEMMILL, Judge.