NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

ARIZONA BILTMORE HOTEL VILLAS CONDOMINIUMS
ASSOCIATION INC, *Plaintiff/Appellee,*

*v.*

THE CONLON GROUP ARIZONA, LLC, et al., *Defendants/Appellants.*

No. 1 CA-CV 21-0432
FILED 5-12-2022

---

Appeal from the Superior Court in Maricopa County
No.  CV2015-013012
The Honorable Roger E. Brodman, Judge (Retired)

**AFFIRMED**

---

COUNSEL

Pettit Kohn Ingrassia Lutz & Dolin PC, Los Angeles, CA
By Grant D. Waterkotte, Tristan A. Mullis
*Counsel for Plaintiff/Appellee*

Finney Law Office LLC, Clayton, MO
By Daniel P. Finney
*Counsel for Defendant/Appellant Conlon*

Ahwatukee Legal Office PC, Phoenix
By David L. Abney
*Counsel for Defendant/Appellant Finney*

---

## MEMORANDUM DECISION

Judge Randall M. Howe delivered the decision of the court, in which Presiding Judge Jennifer B. Campbell and Judge James B. Morse Jr. joined.

---

H O W E, Judge:

¶1         Mark Finney and The Conlon Group ("TCG") appeal the trial court's judgment awarding $479,562 in damages to the Arizona Biltmore Hotel Villas Condominiums Association. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2         This is the second appeal resulting from the Association's lawsuit against Finney and TCG for various tort and contract claims—including breach of fiduciary duty and negligent misrepresentation—resulting from Finney's and TCG's actions in a 2013 lawsuit between the Association and the Arizona Biltmore Hotel and Salt River Project ("SRP").[1] Between 2004 and 2015, Finney served as president of the Association's Board of Directors and independently owned and controlled TCG. As president, Finney launched the Association's 2013 litigation, alleging that SRP had breached its contract and wrongfully terminated a joint use agreement that ended the Association's rights to 103 parking spaces ("South Spaces"). Finney and the Association also requested declaratory judgment that it, rather than the Hotel, had exclusive rights to 78 different parking spaces ("North Spaces"). The Association accrued over a million dollars in attorney fees during the 2013 litigation and received a $200,000 settlement from SRP, with the Hotel being dismissed at summary judgment.

¶3         The Association sued Finney and TCG for, among other things, the 2013 litigation's attorney fees, claiming that Finney breached his fiduciary duty as president of the Board and negligently misrepresented

---

[1]         The factual and procedural history for this case has been largely recounted in this court's opinion *Arizona Biltmore Hotel Villas Condominiums Ass'n v. Conlon Grp. Arizona, LLC*, 249 Ariz. 326 (App. 2020), which we abridge and supplement for purposes of this appeal.

facts to the Board during the 2013 lawsuit. After a bench trial, the trial court found that Finney as an individual and jointly and severally with TCG breached his fiduciary duty as the Board president for his conduct related to the South Spaces litigation. It found, however, that Finney and TCG were not liable for the North Spaces litigation. In calculating the damages award, the trial court took the amount the Association sought in attorney fees in the 2013 litigation, $1,049,562, and subtracted the SRP settlement, $200,000. It also subtracted the amount the "Association was prepared to spend" for both the "Northern and Southern Spaces" litigation if the facts were "as the non-Finney Board members believed them to be," $350,000, for a total damage amount of $479,562.

¶4        Finney appealed. This court affirmed the trial court's judgment in all respects but vacated the $479,562 damages award, finding the trial court had "never deducted the Association's fees on [the North Spaces] claim from its total damage award." *See Arizona Biltmore Hotel Villas Condominiums Ass'n*, 249 Ariz. at 333 ¶ 33. We remanded to the trial court to "conduct such proceedings" necessary to deduct the attorney fees incurred in the North Spaces litigation. *Id.*

¶5        At the evidentiary hearing, the trial court stated it should have been clearer in, or should have clarified, its initial ruling because the $350,000 deduction had accounted for all the North Spaces' attorney fees. Although the Association never presented either a contemporaneous or a re-created itemized billing statement dividing fees between the North and South Spaces, the trial court determined that the Association proved with "absolute certainty that the North Spaces fees" did not exceed $350,000, or one-third of the total fees.

¶6        To explain the amount, the trial court identified several items in the record that supported its conclusion. After judgment had been entered in the North Spaces litigation, Finney e-mailed another Board member on October 16, 2014, stating that the $470,000 in attorney fees incurred by that date had been for both the South and North Spaces litigation. The trial court thus determined that all attorney fees from October 2014 until the litigation's end involved only the South Spaces litigation minus $30,000 for the North Spaces appeal, a difference totaling nearly $550,000.

¶7        Although the trial court said it did not know exactly how the pre-October 16 attorney fees were allocated, it determined that "it [wa]s not remotely possible" that the North Spaces fees were substantially greater than the South Spaces fees because (1) the Hotel's fees for the North Spaces

litigation were only $136,356 while SRP's fees four months later were $570,000; (2) the Association prepared a $13 million claim against SRP in the South Spaces litigation with an expert charging more than $126,000; and (3) the Association had litigated and prevailed on various motions to dismiss, including four dispositive motions, and needed to litigate multiple discovery motions by October 31, 2014. Indeed, the trial court found that the South Spaces litigation had "spun out of control" because SRP employed a "scorched earth" strategy to the litigation. *Id.*

**¶8**        Thus, it concluded that "well under half" of the $470,000 in attorney fees were incurred on the North Spaces litigation. While it recognized that finding that the Association had incurred $700,000 in the South Spaces litigation was "favorable to defendants and probably significantly underestimate[d] the Association's damages," it concluded that $350,000 of the total fees for the 2013 litigation were for the North Spaces. It signed a new final judgment awarding the Association $479,562 in damages. Finney and TCG timely appealed.

## DISCUSSION

**¶9**        Finney and TCG argue that the trial court improperly deviated from this court's mandate and that insufficient evidence supported the trial court's conclusion that $350,000 was spent on the North Spaces litigation. We review whether a trial court follows an appellate court's mandate de novo, *In re Marriage of Molloy*, 181 Ariz. 146, 149 (App. 1994), and review the trial court's damages award for an abuse of discretion, *Arizona Biltmore Hotel Villas Condominiums Ass'n*, 249 Ariz. at 333 ¶ 31.

### I.        The trial court did not improperly deviate from the mandate.

**¶10**        An appellate mandate, along with the decision it seeks to implement, is binding on the trial court and enforceable according to its "true intent and meaning[,]" *Raimey v. Ditsworth*, 227 Ariz. 552, 555 ¶ 6 (App. 2011), as the "law of the case[,]" *Dancing Sunshines Lounge v. Indus. Comm'n of Ariz.*, 149 Ariz. 480, 482 (1986). In construing a mandate's true intent and meaning, a trial court is limited to the "specific direction of the mandate" as interpreted "*in light of the opinion.*" 5 Am. Jur. 2d App. Rev. § 685 (emphasis added). Although a trial court is generally required to adhere to this court's "direction," it may deviate from that direction if doing so is not "contrary to the spirit of the appellate court's decision." *United States v. Perez*, 475 F.3d 1110, 1113 (9th Cir. 2007) ("[A]n order issued after remand may deviate from the mandate if it is not counter to the spirit of the circuit court's decision.").

¶11 Contrary to Finney and TCG's contention otherwise, the trial court's new judgment did not violate the "true intent and meaning" of this court's mandate and opinion. *See Raimey*, 227 Ariz. at 555 ¶ 6. The intent and spirit of this court's first opinion required a damages award free from the North Spaces litigation's attorney fees, expressed by its requirement that the trial court deduct those fees from the damages award. *See Arizona Biltmore Hotel Villas Condominiums Ass'n*, 249 Ariz. at 333 ¶¶ 33–36; *see also Harbel Oil Co. v. Superior Ct. of Maricopa Cnty.*, 86 Ariz. 303, 306 (1959) (resolving whether trial court violated the mandate required analysis of the appellate court's decision); 5 Am. Jur. 2d App. Rev. § 684. But as the trial court made clear in its judgment on remand, attorney fees for the North Spaces litigation had not been included in the original $479,562 damages award. Thus, any deviation from the mandate's direction to deduct additional fees for the North Spaces litigation was consistent with the mandate's intent and spirit, assuming evidence supports the trial court's judgment on remand. *See Raimey*, 227 Ariz. at 555 ¶ 6; *Perez*, 475 F.3d at 1113; *see also Sibley v. Jeffreys*, 81 Ariz. 272, 277 (1956) (noting that trial courts may deviate from a remand if the previous ruling on appeal is "manifestly or palpably erroneous").

## II.     Sufficient evidence supports the trial court's damages award.

¶12 Considering the trial court's clarification and the reasoning on remand, the trial court did not err because sufficient evidence supports the trial court's conclusion that the North Spaces attorney fees did not exceed $350,000. Once the fact of damages has been established, the amount of the damages may be established with less certainty than is needed to establish the fact of damage. *Earle M. Jorgensen Co. v. Tesmer Mfg. Co.*, 10 Ariz. App. 445, 450 (1969). The award cannot hinge on conjecture or speculation, however, and must be supported by some reasonable basis for computing the amount of damages with such precision as, "from the nature of his claim and the available evidence, is possible." *Walter v. F.J. Simmons & Others*, 169 Ariz. 229, 236 (App. 1991). This court views the facts "in the light most favorable to upholding the [trial] court's ruling[,]" *Bennett v. Baxter Grp., Inc.*, 223 Ariz. 414, 417 ¶ 2 (App. 2010), and will affirm unless it finds clear error, *Elar Invs., Inc. v. Sw. Culvert Co.*, 139 Ariz. 25, 30 (App. 1983).

¶13 Neither party disputes that the 2013 litigation attorney fees totaled $1,049,562. Neither party disputes that as of October 16, 2014, the hotel had been dismissed from the litigation and $470,000 had been spent on both the North and South Spaces litigation, with another $30,000 spent on the North Spaces appeal. Thus, over half of the total 2013 litigation's attorney fees, or nearly $550,000, was spent on the South Spaces after the

Hotel had been dismissed from the litigation ($1,049,562-$470,000-$30,000=$549,562). Although the record does not show an exact calculation of how the $470,000 in attorney fees was itemized between the North and South Spaces litigation, the Association provided proof to a reasonable degree of certainty that no more than $350,000 was spent on the North Spaces litigation, including the $30,000 appeal.

¶14 The Association had brought a $13 million claim against SRP in the South Spaces litigation. As a result, the South Spaces litigation was highly contested during 2013 and 2014. By November 2014, the Association had—over the first 15 months of litigation—defended and prevailed on various motions to dismiss, including against dispositive motions claiming that it had (1) had failed to include the United States as an indispensable party (twice); (2) filed a defective Notice of Claim; (3) failed to comply with the statute of limitations; and (4) failed to prove damages. The Association had also litigated multiple discovery disputes. Indeed, by February 2015, SRP had spent over $570,000 in the South Spaces litigation. On the other hand, the Hotel had spent only $136,356 to defend the entire North Spaces litigation. Through a comparison of the fees spent to defend each case, evidence to a reasonable degree of certainty supports the trial court's conclusion that well under half of the $470,000 in fees incurred before October 16, 2014, was for the North Spaces litigation and that the total spent on the North Spaces litigation did not come close to exceeding $350,000. *See Gilmore v. Cohen*, 95 Ariz. 34, 36 (1963) (requiring a plaintiff provide a "reasonable basis" for computing damages with such precision as is possible). Thus, the trial court did not abuse its discretion in finding that the attorney fees incurred by the North Spaces litigation had already been deducted from total damages.

¶15 Finney and TCG argue, however, that the trial court's methodology was inadequate. They claim that the Association needed to provide an itemized list of attorney fees—contemporaneous or recreated—and that without a list, the trial court lacked a factual basis to determine the attorney fees attributable to the North Spaces. That requirement, however, is for requested attorney fees under A.R.S. § 12–341 or another like statute. *See, e.g.*, *Schweiger v. China Doll Rest. Inc.*, 138 Ariz. 183, 188 (1983). In those instances, a plaintiff anticipates an award of attorney fees and can readily track all fees and costs to submit to a court if successful. But as is the case here, when attorney fees become damages in an independent cause of action, the Association needed only to establish damages to a reasonable level of certainty. *See Gilmore*, 95 Ariz. at 36; *Earle M. Jorgensen Co.*, 10 Ariz. App. at 450. Although itemized billing sheets would have been helpful, they were unnecessary. Furthermore, to the extent that Finney controlled

the 2013 litigation before 2015, his failure to demand contemporaneous itemized billing, even if inadvertent, does not prevent the Association from gaining meaningful recovery. *See Rancho Pescado, Inc. v. Nw. Mut. Life Ins. Co.*, 140 Ariz. 174, 184 (App. 1984) (unfair to deny a plaintiff meaningful recovery because defendant's actions prevented a showing of damages).

¶16        Finney and TCG next contend that the trial court's finding that $350,000 was meant to account for all the fees of the North Spaces litigation contradicts its original ruling. But the court found that Finney had fraudulently induced the Association to incur the fees in the South Spaces litigation. Thus, the $350,000 the Association was prepared to spend if the facts were as they believed them to be could equal only the amount in the North Spaces litigation. *See Title Ins. Co. of Minn. v. Acumen Trading Co.*, 121 Ariz. 525, 526 (1979) ("A construction will be adopted that supports the judgment, rather than one that destroys it[.]"). Alternatively, while the trial court reasoned that it applied $350,000 to the North Spaces litigation because the amount was one-third of the total attorney fees, it also suggested that well under $235,000 was attributable to the North Spaces litigation. Thus, the new judgment could also be construed as apportioning some amount of the reduction to the South Spaces litigation, thereby conforming with the original judgment. Either way, the judgment on remand can be construed consistently with the original judgment. *See id.* The trial court therefore did not err in finding that no more than $350,000 was attributable to the North Spaces litigation.

## CONCLUSION

¶17        For the foregoing reasons, we affirm. Finney and TCG request their costs on appeal, which we deny because they did not prevail in the appeal. The Association requests their attorney fees and costs on appeal. But because the Association does not provide any basis for its request, we decline to award the Association its attorney fees. *See* ARCAP 21(a)(2) ("A claim for fees under this Rule must specifically state the statute, rule, decisional law, contract, or other authority for an award of attorney[] fees."). As the prevailing party, however, the Association is entitled to its costs incurred on appeal upon compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED:    AA